724 F.Supp. 1118 (1989)
UNITED STATES of America
v.
Jose RODRIGUEZ, Defendant.
No. 88 Cr. 117 (PNL).
United States District Court, S.D. New York.
October 27, 1989.
Otto Obermaier, U.S. Atty., S.D.N.Y., New York City, and Robert Cramer, Asst. U.S. Atty., for U.S.
Maurice Sercarz, New York City, for defendant.

OPINION AND ORDER
LEVAL, District Judge.
The sentencing of Jose Rodriguez raises the question of the court's right to depart from the sentences specified in the Guidelines promulgated by the United States Sentencing Commission. Rodriguez was found guilty after trial of violating the narcotics laws by selling two vials of crack for ten dollars.
The purchaser appeared to be an addict, but turned out to be an undercover police officer. At trial the defendant did not deny the sale but raised the question whether the police officer's conduct (in pretending to be an addict) constituted entrapment. The jury rejected the defense and rendered a guilty verdict.
*1119 At the time of the offense the defendant was an addict, 35 years old, living alone, apart from his wife and children, his life in serious disrepair. Since his arrest, he has accomplished an impressive rehabilitation. He has succeeded in overcoming his addiction and has remained drug-free for almost two years. He has reunited with his wife and children, has undertaken the full responsibilities of the role of husband, father and provider, has obtained employment, and has taken courses with a view to bettering his employment opportunities.
The analysis of the Guideline computation performed by the Department of Probation, with the agreement of the parties, places the defendant at Level 11 in Criminal History Category I, resulting in a Guideline range of 8 to 14 months. This limitation is overridden, however, by the restrictions of the criminal statute under which he was convicted. That statute, 21 U.S.C. § 845(a), although it does not require imprisonment, does require that any term of imprisonment be for "not less than one year."
Accordingly, for reasons dictated by statutory law independent of the Guidelines, the court has no power to sentence the defendant to any period of imprisonment of less than a year. Statutory law does permit a sentence without any imprisonment, but the Guidelines specify a minimum eight-month period of imprisonment. Thus, unless the court has the power to depart from the Guideline specification by reason of the defendant's personal characteristics, a sentence of at least one year's imprisonment must be imposed.
I would consider it senseless, destructive and contrary to the objectives of the criminal law to now impose a year's jail term on this defendant. In my view, the reasons for such a term are feeble and are clearly outweighed by the reasons favoring a non-jail sentence. The rehabilitation of a drug addict by his act of will is no mean accomplishment. Because of it, his children and wife have recovered their father, husband and provider, and society has regained a productive citizen. It appears society has nothing to fear from him, as it seems most unlikely he will now throw away his rehabilitation and return to drugs. The imposition of a year's jail sentence would serve no end, but ritualistic punishment with a high potential for destruction. Indeed, putting the defendant in jail for a year would be the cause most likely to undo his rehabilitation.
Accordingly, it is necessary to determine whether the sentencing scheme promulgated by the new statute and guidelines permits downward departure by reason of the personal characteristics of the offender. I conclude that they do for the reasons set forth in this opinion.

DISCUSSION
a. The Statutory Scheme. It is a widespread but serious misconception that Congress, in passing the Sentencing Reform Act of 1984 and directing the creation of the Guidelines, intended to do away with consideration of the personal characteristics of the offender. Without question, the Act sought to limit the disparities of sentence that could result from different judges applying varying assessments to such factors. Thus 28 U.S.C. § 991(b)(1)(B) asserts a purpose of "reduc[ing] unwarranted sentencing disparities." But the importance of the individual characteristics of the defendant is stressed in the new legislation.
Title 18, Section 3553(a)(1) of the Sentencing Reform Act directs sentencing courts to consider the "nature and circumstances of the offense and the history and characteristics of the defendant." (Emphasis added.) Section 994 of Title 28, in specifying the duties of the Commission, directs that the Commission establish a sentencing range "for each category of offense involving each category of defendant." (Emphasis added.) The point is driven even more forcefully by the next two subsections (c) and (d). One of these is addressed to offense categories, the other to offender categories.
Section 994(c) instructs the Commission to "establish[] categories of offenses ... governing the imposition of sentences...." The Commission is directed to consider a *1120 list of recommended factors and to take them into account to the extent that they have relevance.
Section 994(d) is the exact counterpart concerning offender characteristics. The Commission is directed to establish "categories" of defendants. It is directed to consider a list of eleven recommended factors to be taken into account to the extent they are relevant. 28 U.S.C. §§ 994(c) and (d).
Numerous other provisions of the Act reinforce Congress' intention that personal characteristics of the defendant enter into the fixing of the sentence. Section 991(b)(1) specifies among the purposes of the Sentencing Commission that sentences provide "fairness" and "reflect to the extent practicable advancement in knowledge of human behavior as it relates to the criminal justice process." Section 3552 provides for a "presentence investigation of a defendant"; a court which desires more information "may order a study of the defendant," as well as a psychological examination. Section 3553 provides that the sentence should be "sufficient, but not greater than necessary to comply with [specified] purposes" including "(A) ... to provide just punishment ... [and] (C) to protect the public from further crimes of the defendant." This direction unquestionably envisions more severe sentences for defendants considered more likely to commit further crimes and less severe sentences for those unlikely to commit crimes. 18 U.S.C. § 3553(a)(2)(C).
I recognize that § 994(e) can be read as countering some of the thrust of § 994(d). It speaks of the "general inappropriateness" of some of the factors listed in § 994(d) "in recommending a form of imprisonment or length of a term of imprisonment." What this subsection means is anyone's guess. It certainly cannot be read as countermanding the numerous express directions in the above cited statutes that sentences be fair and be based on consideration of the personal characteristics of the defendant as well as the type of offense.
Considered in its totality, the statutory formula directs the creation of a sentencing scheme of guidelines governed by consideration of the relevant aspects of both offense and offender characteristics.
b. The Guidelines. It is not surprising that the Commission found its chore difficult to accomplish. The first version of the Guidelines, admittedly incomplete, see Manual Chapter 1, Part A, intro., 4(b), approaches the task by providing an allowance for departure, where appropriate, in place of schedules quantifying the significance of offender characteristics.
Offender characteristics have been virtually excluded from the guideline grid calculation leading to the presumptive sentence. The only aspect of offender characteristic having any significant effect is the offender's history of prior convictions, which governs the Criminal History Category. Dependence on criminal livelihood exists theoretically as a guideline factor, but has no effect except at the lowest end of the offense range as its only function is to require a minimum offense classification of 13. United States Sentencing Commission Guidelines Manual ("Manual"), § 4B1.3. A modest upward or downward modification exists for "role in the offense." § 3B1.4. But it is questionable whether "role in the offense" is properly deemed an offender characteristic at all, as opposed to offense characteristic, as it looks to the offense conduct  not to the individual characteristics of the person who committed the offense. Thus, in the construct of the guideline grid that determines sentence range, offender characteristics play virtually no role.
If this were the entire story of the Commission's discharge of its statutory duties, a serious question would arise whether the Guidelines must be struck down for failure to conform to the governing statute. Although the Commission has considerable discretion, it would not have the authority simply to disregard the central thrust of the statute. If the Guidelines had approached the issue of offense categories by treating all offenses as identical, excepting perhaps those involving killings, so simplistic and unsatisfactory a discharge of the obligation to classify offenses would surely *1121 be seen as a failure to carry out the commands of the statute. Likewise, had the Commission discharged the obligation to establish offender categories by providing that all offenders must be treated as identical, excepting modest variations based on the number of prior convictions, this would equally constitute an invalid disregard of the statutory command.
That is not, however, what the Commission has done. It has handled the difficult problem of offender categories in a different fashion. Although they were essentially left out of the Guideline calculation, they are provided for through Policy Statements and through the departure power. With reference to the first eight statutory factors suggested as bearing on offender categories, the Manual asserts in Policy Statements that they "are not ordinarily relevant." Manual Chapter 5, Part H. The assertion that they are not ordinarily relevant carries by hypothesis the implication that they are sometimes relevant. Notwithstanding their relevance in the unusual case, they are never reflected in the Guidelines computation.
The Manual, however, expressly provides that the departure power should be utilized to achieve an appropriate sentence in the "atypical" case. This discussion in the introduction explicitly states that the offender characteristics referred to in Chapter 5, Part H, "may constitute grounds for departure."
The Commission's discussion in the Introduction to the Manual inviting consideration of departure states:
[I]n principle, the Commission, by specifying that it had adequately considered a particular factor, could prevent a court from using it as grounds for departure. In this initial set of guidelines, however, the Commission does not so limit the court's departure powers. The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted. Manual, Chapter 1, Part A, intro., 4(b).
The Introduction goes on to say:
A third kind of departure will remain unguided. It may rest upon grounds referred to in Chapter 5, Part H, or on grounds not mentioned in the guidelines. While Chapter 5, Part H lists factors that the Commission believes may constitute grounds for departure, those suggested grounds are not exhaustive. Manual, Chapter 1, Part A, intro., 4(b).
The Commission has therefore adopted, at least initially, an approach somewhat different from what the statute anticipated. The statute anticipated categorizing offenses and offenders and allowing departure only by reason of a circumstance "not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). The Commission categorized offenses but not offenders. This was no doubt because of the great difficulty of establishing across-the-board values for such intangibles. Instead the Commission expressly acknowledged the need in the "atypical" case for invocation of the departure power to give appropriate effect to personal characteristics.
The Commission imposed several restrictions. Neither race, nor poverty, nor drug dependence are appropriate grounds for departure. Manual §§ 5H1.4 and 5H1.10. The Commission further expressed its expectation that the departure power would not be used promiscuously without adequate justification. Manual Chapter 1, Part A, intro., 4(b). It, nonetheless, expressly invited a freer exercise of departure than it would approve if it had attached scheduled values to the personal characteristics of the defendant. The Court of Appeals has recognized the need for departures. See United States v. Correa-Vargas, 860 F.2d 35, 37 (2d Cir.1988).
I stress that the departure power can operate upward as well as downward. This would have been appropriate when Al Capone was prosecuted for a relatively minor income tax violation. See United States v. *1122 Barone, 89 Cr. 301(CLB) (S.D.N.Y. Sept. 29, 1989) (departure upward because guidelines did not consider gravity when perjury is willfully committed by defendant who is high-ranking public official in community); United States v. Stehman, 1 Fed.Sent.R. 292 (M.D.Pa.1988) (departure upward because guideline range did not consider gravity when drug crime is committed by the community pharmacist with full knowledge of the harm he is causing to community); United States v. Hon, 2 Fed.Sent.R. 84, 1989 WL 59613 (S.D.N.Y.1989) (downward departure because of family responsibilities of defendant); United States v. Gonzales, 2 Fed.Sent.R. 81, 1989 WL 86021 (S.D.N.Y.1989) (family ties justify downward departure); United States v. Pipich, 1 Fed.Sent.R. 120, 688 F.Supp. 191 (D.Md. 1988) (departure downward justified by employment record  military service); United States v. Kopp, 1 Fed.Sent.R. 123 (D.N.D. 1988) (downward departure because of youth and immaturity of defendant); United States v. Grodeman, 1 Fed.Sent.R. 38, 1988 WL 163160 (N.D.Ga.1988) (probation instead of imprisonment based on personal characteristics of defendant); United States v. Haigler, 1 Fed.Sent.R. 34 (D.Minn.1988) (downward departure because of personal circumstances of defendant).
It is not a valid objective of the criminal law to give the same sentence to two persons who have committed the same crime, irrespective of important differences between them. Although such "equality" can sound good in the abstract, its invalidity is easily perceived if concrete examples are taken. Take for example as a hypothetical case two defendants, at opposite poles of humanity, who have each committed the crime of embezzling the same sum while working as an employee of a bank.
Defendant A had 15 years of faithful, diligent employment at the bank. She is universally known by coworkers, family and friends as honest, hard-working, loving and generous. A long illness and premature death of her husband left her life shattered and her finances precarious. One of her four young children then developed the disease that took his father. Desperate to buy expensive medications that might save her child, she embezzled $10,000. The child died before she could spend much of the stolen money on medications. She returned the money and remorsefully confessed her crime to the bank, without which she would not have been caught. She is prosecuted and pleads guilty.
Defendant B had a life of abused and wasted privilege. He has cheated and deceived at every opportunity, abandoned his first wife and children after exhausting his wife's money, remarried bigamously (again for money) without revealing the earlier marriage, obtained the job at the bank (using forged references) only to find a way to embezzle. After he is caught, he pleads guilty and accepts responsibility.
It is scarcely conceivable as an exercise in justice to give these two offenders the same sentence. That it was not the intention of the Sentencing Reform Act is apparent if only from the command that sentences be "sufficient but not greater than necessary ... to provide just punishment ... [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A) and (C). Although I recognize that the example is artificially exaggerated, the exaggeration serves to illustrate the importance of the departure power; for unless departure is invoked, both must be sentenced within a 25% guideline range  an unacceptable result.
Distinguishing between A and B is not the "unwarranted sentencing disparity" the Act sought to terminate. To the contrary, a substantial distinction is fully warranted and required if the system is to do justice. The ability to make that distinction under these Guidelines exists only through exercise of the departure power.
It is most important, furthermore, to assist the future work of the Sentencing Commission that district judges recognize and exercise the departure power in appropriate cases. The present Guidelines are the product of empirical study. Manual Chapter 1, Part A, intro., 3. The Commission has announced that it will revise the Guidelines in the future based upon its *1123 study of departures. If district judges fail to depart by reason of a belief that departure is not permitted, the Commission will misread this judicial inaction as endorsement of the appropriateness of the sentences scheduled under the Guidelines. To guide future revision of the Guidelines, sentencing judges have an obligation to create a record for the Commission showing where departure has been found appropriate. See United States v. Birchfield, 1 Fed.Sent.R. 431, 709 F.Supp. 1064 (M.D. Ala.1989).
I conclude for the reasons set forth above that this is an appropriate case to make use of the departure power, as expressly invited by the Sentencing Commission.
SO ORDERED.