UNITED STATES of America

v.

**Policarpo CARBONELL, and Ruben Ceballos, Defendants.**

No. 89 CR 0062.

United States District Court, E.D. New York.

May 4, 1990.

See also 719 F.Supp. 119.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Steven Abrams, Asst. U.S. Atty., Brooklyn, N.Y., for the U.S.

Linda Povman, Elmhurst, N.Y., for Policarpo Carbonell.

Joseph Schioppi, Elmhurst, N.Y., for Ruben Ceballos.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Defendant Ruben Ceballos pleaded guilty to one count of an indictment charging him with possession of cocaine with intent to distribute. 21 U.S.C. § 841(a)(1). Under the Sentencing Reform Act of 1984, defendant's offense level was determined to be 20 points; the sentencing guidelines suggest a sentence of 33 to 41 months. For the reasons stated below, the court departs downward from the guideline range, and imposes a prison sentence of 12 months with 5 years supervised release.

In January, 1989, Ceballos had been working at a clothing store in Jackson Heights, New York, as a salesman earning $185.00 per week. He lived with and was supporting his common-law wife who was pregnant at the time. Sometime at the beginning of January, Ceballos was at work when he met defendant Policarpo Carbonell. Carbonell had come into the store to look for a job. Carbonell and Ceballos both grew up in Cali, Colombia. Ceballos informed Carbonell that there was no job available at the store, but he offered to help Carbonell try to get a job painting apartments.

Sometime later, Carbonell returned to the store, and asked Ceballos if he would help Carbonell deliver drugs, for which Carbonell would be paid $300. At first, Ceballos did not want to participate, but he agreed because he thought that Carbonell was "in a desperate position" and needed help. Ceballos was not offered nor did he receive any money for his participation.

On January 12, 1989, Ceballos drove Carbonell to the delivery location. Both men were arrested by DEA agents who happened to be in the neighborhood where the delivery was to take place, and observed their activity.

Ceballos had no prior history of any drug activity.

Ceballos testified at his plea and at his sentencing hearing that his sole motivation in agreeing to drive Carbonell was to help out a fellow Colombian from the same hometown who was down on his luck. Ceballos stated that this was a common sentiment in the Hispanic community, and that he, like many people he knows, feel an obligation to help those from his country who need it.

Carbonell's testimony corroborated Ceballos' state of mind. The court credits the sincerity of both defendants. In addition, a letter submitted to the court from Ceballos' common-law wife states that Ceballos was merely "acting out of pity for somebody."

While Ceballos' actions cannot be condoned, he did not act with what one would usually consider criminal intent. Ceballos was motivated wholly by a sense of obligation toward a person from the same town as he, who was experiencing financial hardship in a foreign country. The cohesiveness of first generation immigrant communities in the United States engenders loyalty, responsibility and obligation to others in the community, even if they are strangers. It is these sentiments that prompted Ceballos' misguided behavior.

The court notes that the guidelines must be "entirely neutral as to the ... socioeconomic status of the offenders." 28 U.S.C. § 994(d)(11). In this case, the court is basing its downward departure not on the socioeconomic status of the defendant, but on his personal characteristics as explained by a sociological phenomenon. Such mitigating personal and sociological factors do not appear to have been adequately considered by the Sentencing Commission in formulating the guidelines. *Cf. United States v. Rodriguez*, 724 F.Supp. 1118 (S.D. N.Y.1988) (Leval, J.) (under guidelines, court could take into account personal characteristics of defendant in departing downward). Accordingly, the court departs downward pursuant to the United States Sentencing Commission Guidelines Manual § 5K2.0.

Because during this period of the "war on drugs," it is desirable to send a message to the community in which defendant lives that any association with drugs, no matter what the motivation, will lead to prison, a term of imprisonment is imposed. The court regrets the necessity of having to impose such a harsh punishment on the defendant who was motivated only by feelings of compassion for a person in need. As usual, of course, the family—here his common-law wife and child—will suffer from his absence. The community will probably pay for their welfare benefits as well as the cost of his imprisonment.

SO ORDERED.