**UNITED STATES of America**

v.

**Tina Marie FLOYD.**

**Cr. No. 4-89-4(2).**

United States District Court,
D. Minnesota,
Fourth Division.

May 31, 1990.

———

Jerome Arnold, U.S. Atty., and Jeff Paulsen, Asst. U.S. Atty., Minneapolis, Minn., for U.S.

Andrew Birrell, Meshbesher, Birrell & Dunlap, Minneapolis, Minn., for defendant Floyd.

## MEMORANDUM OPINION and STATEMENT OF REASONS

ROSENBAUM, District Judge.

### I. *Findings of Fact*

The Court is called upon to sentence Tina Marie Floyd for a crime to which she has pleaded guilty. The crime took place subsequent to November 1, 1987, the date upon which the United States Sentencing Commission Guidelines (U.S.S.G.), promulgated pursuant to the Sentencing Reform Act of 1984, went into effect.

On May 16, 1989, defendant entered a plea of guilty to Count II of a five count indictment.[1] Count II charges distribution of cocaine and cocaine base (crack), and aiding and abetting its distribution, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(B), and 18 U.S.C. § 2. Pursuant to Act of Congress, such a violation carries a mandatory minimum sentence of five years. 21 U.S.C. § 841(b)(1)(B). The government, however, has made a motion for relief from the mandatory sentence based upon substantial assistance which has been given by the defendant. 18 U.S.C. § 3553(e). The government's motion is granted, freeing the defendant from the mandatory minimum sentence of imprisonment.

---

1. On May 11, 1989, defendant had previously appeared before the Court to enter her guilty plea. At the time of this appearance, the Court determined that the defendant was incompetent to enter her plea. *See infra.* As a result, the Court ordered defendant into custody, and rescheduled the change of plea for May 16, 1989.

## II. *Application of Guidelines to Facts*

There being no unresolved objections to the factual statements contained in the presentence investigation (PSI) and its addendum, dated July 19, 1989, the Court adopts the findings of the PSI as its findings of fact.[2] The PSI report shall be filed.

Applying the PSI's facts to the guidelines, the Court determines the applicable guidelines:

1) *Base offense level.* Pursuant to U.S.S.G. § 2D1.1(a)(3), the offense level for violations of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(B), and 18 U.S.C. § 2, is determined by the drug quantity involved. Under U.S.S.G. § 1B1.3(a)(2), all quantities that "were part of the same course of conduct or common scheme or plan as the offense of conviction" are added. The total quantity of cocaine in Counts I and II was 19.51 grams and the total quantity of cocaine base (crack) in Counts II and III was 35.51 grams. After converting the crack into guidelines-equivalent cocaine, and converting grams into kilograms, this "common scheme or plan" yields a total of 3.57 kilograms of cocaine. U.S.S.G. Drug Equivalency Table; Measurement Conversion Table. The base offense level for offenses involving 3.5–4.9 kilograms of cocaine is 30. U.S.S.G. § 2D1.1(a)(3); Drug Quantity Table.

2) *Adjustment for Acceptance of Responsibility.* The Court finds defendant has exhibited acceptance of responsibility for her behavior: she has demonstrated sincere remorse for her actions, she has expressed concern for her family, she has made substantial efforts to conform her behavior to the law, and she has indicated and demonstrated her desire to remain drug free. She, therefore, is entitled to a two point reduction in the offense level.

U.S.S.G. § 3E1.1. Accordingly, her total offense level is 28.

3) *Criminal History.* Defendant has no prior felony or misdemeanor convictions which results in a criminal history category of I. U.S.S.G. § 4A1.1.

4) *Guidelines Sentencing Range.* Based upon a total offense level of 28 and a criminal history category of I, the presumptive imprisonment range is 78–97 months. U.S.S.G. Sentencing Table.

5) *Supervised Release.* Under the guidelines, the Court must impose a supervised release term of at least 4 years. U.S.S.G. § 5D1.2(a).

6) *Fine.* The presumptive guidelines fine range is $12,500 to $2,000,000. U.S.S.G. §§ 5E1.2(c)(1)(A) and 5E1.2(c)(4). Subject to the defendant's ability to pay, the Court is directed to impose an additional fine amount equal to the costs of imprisonment, probation, or supervised release ordered. U.S.S.G. § 5E1.2(i).

7) *Restitution.* The Victim and Witness Protection Act is not applicable to Title 21 offenses. 18 U.S.C. § 3663.

8) *Special Assessment.* A special assessment of $50 is mandatory. 18 U.S.C. § 3013.

## III. *Motions for Departure*

Based on the defendant's good faith efforts to provide assistance, the government moves for a downward departure from the guidelines range of 81–97 months. Having made this motion for departure, the United States makes a non-binding recommendation of a sentencing range of 33–41 months. 28 U.S.C. § 994(n); U.S.S.G. § 5K1.1. The defendant also urges this Court to depart from the guidelines.[3] The defense asks that defendant be sentenced

---

**2.** The Court notes that the Defendant's Position With Respect to Sentencing Factors, filed July 17, 1989, asserts that the PSI does not reflect the full details of the plea agreement regarding the applicable sentencing range. In particular, defendant reminds the Court that the plea agreement contemplates a sentence range of 18–41 months based upon a motion for a downward departure, pursuant to U.S.S.G. § 5K1.1.

**3.** The defendant's sentencing recommendation recognizes that the offense level is not determined solely on the drug weight in the count to which the defendant pleads. Defendant urges this Court to limit sentencing consideration to the contraband which was seized directly from the defendant. She points out that she played a relatively minor role as compared to co-defendant Woods and that a relatively minor substance amount was connected directly to her.

to time served plus a 4–5 year term of supervised release with stringent conditions.

## IV. *Imposition of Sentence*

■ For the reasons set forth below, the Court finds it proper to depart from the presumptive guidelines table and imposes the following sentence.

Defendant Tina Marie Floyd has been charged in Count II with the distribution of cocaine and cocaine base, and with aiding and abetting its distribution, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(B), and 18 U.S.C. § 2. Based upon the defendant's plea of guilty to that charge, it is considered and adjudged that she is guilty of that offense.

Therefore, it is adjudged that the defendant is sentenced to imprisonment for a period of 16 days. The Court notes that the defendant was incarcerated from May 11, 1989, to May 26, 1989, and grants the defendant sentencing credit for this period. As a result, the defendant has fulfilled this 16 day portion of her sentence.

Hereafter, the defendant is sentenced to serve a period of five years of supervised release under the following special conditions:

1. The defendant shall serve home detention for a period of six months. The defendant shall be restricted to her place of residence continuously, except for probation office-authorized absences. Such absences may be for gainful employment, community service, religious services, medical care, educational or treatment programs, or such other reasons. Probation office authorization must be obtained prior to any absence, excepting only medical emergency. This condition shall be enforced by any means of surveillance deemed appropriate by the probation office. U.S.S.G. § 5F1.2.

2. The defendant shall comply with all federal, state, and local laws. 18 U.S.C. § 3583(d).

3. The defendant shall comply with the thirteen standard conditions of supervised release recommended by the Sentencing Commission. U.S.S.G. § 5B1.4(a).

4. The defendant shall not possess a firearm or other dangerous weapon. U.S.S.G. § 5B1.4(b)(14).

5. The defendant shall submit to periodic drug testing as directed by the probation office or this Court. The defendant shall participate in and complete any substance abuse program recommended by the probation office. U.S.S.G. § 5B1.4(b)(23).

6. The defendant shall comply with all rules and regulations of the probation office.

7. During the next two years the defendant shall contribute 200 hours of community service to an organization approved by the probation office. U.S.S.G. § 5F1.3.

8. The defendant shall participate in and complete any parent education classes recommended by the probation office.

Further, it is ordered that the defendant pay a special assessment fee of $50, which sum is due immediately.

No fine is imposed because it appears that the defendant is without ability to pay.

## V. *Statement of Reasons*

The Court finds there to be three distinct justifications for the sentence imposed, each of which mandates departure from a presumptive sentence. First, the government has made a motion pursuant to 18 U.S.C. § 3553(e) and 28 U.S.C. § 994(n) for relief from the statutorily required minimum sentence. The motion was based upon the acknowledged substantial assistance given to authorities by defendant. By granting the government's motion, this Court is relieved of the statutorily mandated imposition of a five year term of imprisonment. 18 U.S.C. § 3553(e); 28 U.S.C. § 994(n). *See also* U.S.S.G. § 2D1.1, n. 7.

Second, the government has made a motion for downward departure pursuant to U.S.S.G. § 5K1.1, premised upon defendant's assistance. The extent of such a downward departure based upon substantial assistance is reserved to the Court. U.S.S.G. § 5K1.1(a). The written plea agreement indicated that the sentence rec-

ommendation could range from 18–41 months, depending upon the significance of defendant's assistance. The government's downward departure motion recommends a sentencing range of 33–41 months. This recommendation signals that, in the government's view, the defendant's assistance was insufficient to merit the lower sentencing range contemplated by the plea agreement. In addition, the sentencing recommendation from the probation office suggests that the defendant's cooperation was not of "great assistance" to the Drug Enforcement Agency. Accordingly, this Court finds that, absent other considerations, the assistance rendered by defendant would entitle her to a downward departure from the guidelines range of 78–97 months to a sentencing range of 33–41 months.

The Court here notes the substantial and anomalous penalty exacted by § 5K1.1(a) upon the remorseful, but marginally culpable, defendant. The little-involved party may not know enough to be able to turn over valuable information to the prosecution. Such a person is, perforce, unable to render "great assistance." On the other hand, a more culpable defendant, whose misdeeds and knowledge of other wrongdoers are great, is in a position to render great assistance to the government in trade for a favorable recommendation. Thus, the person whose objectively wrongful acts are minor obtains small benefit, but the one whose wrongs are large gets a reward.

Third, this Court finds that, notwithstanding the relief from mandatory sentence and the downward departure sought by the prosecution, further departure is warranted under the circumstances of this case. Congress has made the district courts' power to depart from the guidelines

explicit: "The court shall impose a sentence of the kind, and within the range, referred to in [the guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). *See also United States v. Yellow Earrings*, 891 F.2d 650, 653 (8th Cir.1989); *United States v. Big Crow*, 898 F.2d 1326, 1330 (8th Cir. 1990).

The Court finds that such special, mitigating circumstances exist in this case. There has been substantial and demonstrable post-crime rehabilitation by the defendant. This rehabilitation is of a kind and nature which has not been adequately taken into consideration by the Sentencing Commission. As a result, the guidelines overstate the severity of defendant's offense conduct. *See United States v. Rodriguez*, 724 F.Supp. 1118 (S.D.N.Y.1989).[4] *But see United States v. Van Dyke*, 895 F.2d 984 (4th Cir.1990) ("rehabilitative" conduct of participating in drug abuse treatment program and counseling inmates about drug abuse after arrest and before sentencing is not factor on which departure may be based).[5]

## VI. *Defendant's Substantial Rehabilitation*

On May 11, 1989, at the time of her first attempt to plead, the Court recognized that the defendant was under the influence of drugs. There was a certain spasticity to her gait, her words were hurried or slurred, and her eyes seemed unfocused.

---

**4.** In *Rodriguez*, the Honorable Pierre N. Leval held the personal characteristics of the defendant warranted downward departure where after arrest the defendant overcame addiction; remained drug-free almost two years; reunited with wife and children; undertook full responsibilities of role of husband, father, and provider; obtained employment; and took courses to better his employment opportunities. *Rodriguez*, 724 F.Supp. at 1119, 1123.

**5.** The Court recognizes that the *Van Dyke* opinion was authored by the Honorable William

Wilkins, Chairman, United States Sentencing Commission. Judge Wilkins' views clearly have great weight and are now the law in the Fourth Circuit. But no such rule has been elucidated in the Eighth Circuit. The Court suggests that, in the event of appeal, the Eighth Circuit should visit this issue carefully. A sentencing scheme which does not touch upon, or even recognize, that one can obviously and demonstrably reform one's actions cannot have been within the contemplation of Congress.

While her answers to court inquiries were facially coherent, her expressed thoughts had an unfixed and scattered quality. To her credit she honestly acknowledged her very recent use of cocaine and marijuana. The Court immediately took her into custody and directed the U.S. Marshal to accompany defendant while she secured shelter for her four children.

Defendant's system cleansed itself of drugs in the ensuing week, and the Court found the defendant competent to enter her plea on May 16, 1989. She was returned to the custody of the U.S. Marshal and remained removed from her children. On May 26, 1989, almost two weeks later, she sought pre-sentence release to assure the care and custody of her children. The Court expressed great skepticism that an abuser and dealer of crack cocaine could completely abstain from the use and abuse of this material. *See* Motion Transcript (May 26, 1989).

To assure itself of the defendant's abstention from the use of drugs, the Court released defendant on May 29, 1989, pending sentencing, and ordered her to report to Pretrial Services three times per week for chemical testing. The Court received a Bond Reporting Update, dated August 3, 1989, from the U.S. Probation Office. According to the report, defendant had reported to Pretrial Services every Monday, Wednesday, and Friday, and submitted urine samples each time. All urine samples from May 29, 1989, to August 3, 1989, tested negative for illegal substances. The Court found this to be a most unexpected result.

To test the accuracy of this observation, and the defendant's ability to refrain from drug use, the Court, on August 3, 1989, deferred the imposition of sentence for a period of nine months. This delay in sentencing has culminated in this order. Defendant has continued her drug-testing regime. In the year's time since she was taken into custody at her failed plea, there has been no evidence or indication that she has used any illegal drug. To the contrary, in this time she has repeatedly tested drug-negative in all respects. This Court received a Bond Reporting Update from the U.S. Probation Office, dated May 16, 1990. According to the report, since August, 1989, defendant has reported to Pretrial Services twice each week. Defendant has complied with all reporting requirements and has submitted weekly and random urine samples. All samples tested negative for illegal substances.

This is no small accomplishment when one considers the incredibly addictive nature of crack, of which the Court easily takes judicial notice. Rule 201, Federal Rules of Evidence. This astonishing turnaround would be entirely unrewarded by imprisonment; her children would be left without their mother's care, to no benefit to the public.

Congress has obviously determined that trafficking in cocaine is a serious problem meriting harsh punishment. Nevertheless, Congress cannot have intended such a harsh result to fall upon such a defendant. She played a role, but her role clearly was exaggerated by the investigative methods in this case.

The Court is focused here on another harsh, and most probably unintended, effect of the sentencing guidelines scheme: in controlled substance cases the sentence is based on the cumulative weight of all the drugs in all of the charged transactions. On its face, this concept appears simple and just—the more drugs, the greater the sentence.

But looks, in this case, are most deceptive. The defendant was not the object of this investigation. The investigation actually focused on her co-defendant. He insulated his drug trafficking by her sales. One undercover sale was not enough to allow the police to get to the source. Nor were two sales, or even three. Each was a confidence builder and moved the investigation closer to Mr. Woods. But in the process, the quantity "dealt" by the defendant grew. If it would have taken 100 "buys" it is conceivable the cumulative penalty could have cost her life in prison—all to get at Mr. Woods. And the police could have arrested her, thus stopping her "life of crime," after the first transaction. The

Court is troubled by the fact that the guidelines, in conjunction with certain investigative methods, can multiply a few months' jail time into a potential multi-year sentence. *See United States v. Batista–Segura,* No. S89Cr.377 (S.D.N.Y. Oct. 19, 1989) (1989 WL 125838) (guidelines give "insufficient consideration to the significance in drug offenses of a participant's lack of knowledge of or stake in the scope of a transaction, in view of the weight-driven system of grading such offenses"). This concern is compounded here: Mr. Woods absconded prior to trial and is a fugitive at this time. The defendant has pleaded guilty and is exposed to a 78–97 month guidelines sentence.[6]

The Bond Reporting Update, dated May 16, 1990, indicates defendant maintained employment in a janitorial capacity from May, 1989, to January 1990, when she quit due to baby-sitting problems. In addition, defendant continues to care for her four children. U.S.S.G. § 5H1.6 states that family ties and responsibilities are not ordinarily relevant. In this particular case, the Court finds family responsibilities to be relevant. This is a woman without a permanent partner who has four children, ranging in age from nine years to three months at the time of her plea. This woman's four young children can depend only upon their mother. Imprisonment of the mother would place these minor children at risk. *See United States v. Gonzalez,* No. S.88Cr.559 (S.D.N.Y. July 27, 1989) (1989 WL 86021).

The Court is convinced by objective demonstrable evidence that this young woman has materially changed her life.[7] The sentence imposed is reasonable and adequately addresses the sentencing factors set forth in 18 U.S.C. § 3553(a). There is a full year's indication that defendant will continue her efforts to conform herself to society's rules, that she will not violate any of the conditions of her supervised release, and that she will be a productive member of society. She has reflected upon her criminal conduct and its impact on her family, society, and her life.

The six month sentence to home detention allows supervision of the defendant within the community. Home detention is sufficiently punitive; the defendant's freedom is restrained substantially. Full incarceration would be unwarranted and useless. In the unlikely event that the defendant's improved behavior should fail to continue, the Court has imposed five years of supervised release which will be adequate as a balance to the defendant's arguably lenient sentence.

Defendant's substantial assistance to authorities, the extraordinary turnaround in her life, the nature of the investigation, and the fact that she has young children at home needing her care and supervision are factors sufficiently unusual to constitute grounds for departure from the guidelines in this case.

The remaining counts in the indictment are dismissed on motion of the government.

---

**6.** The Court has expressed its concern about an unintended effect of an investigative method. The Court, here, makes explicit that it does not condemn the technique which was used. The Court is well aware of the difficulty and danger inherent in drug investigation. The task is arduous and the drug dealers constantly upgrade their defenses against detection. Stopping drug distribution is a most difficult task and one in which society must be successful.

The Court simply expresses the fact that, in a particular case, multiple purchases can distort the true role of a lesser participant when the sentencing guidelines are applied.

**7.** During the year the defendant has been under the scrutiny of this Court, her behavior has not been perfect. Defendant has been apprehended shoplifting a pair of children's socks valued at $1.59, she has had misdemeanor traffic violations, she has been involved in an altercation with her companion-boyfriend, and she has been arrested for an alcohol-related driving offense. Subsequent testing showed no substantial quantities of alcohol. The Bond Reporting Update, dated May 16, 1990, touching these matters is made part of the file in this cause. While these are not insignificant matters, they are materially different in kind and nature from the criminal event which is before this Court and the Court finds that these events do not diminish the effect of the defendant's major changes in her lifestyle and chemical behavior.