85 F.3d 629
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Richard EDWARDS, Tariton Callier, Benjamin Parker,
Defendant-Appellants.
 Nos. 95-3224, 95-3328 and 95-3089.
 United States Court of Appeals, Sixth Circuit.
 May 2, 1996.
 
 Before: MERRITT, Chief Circuit Judge; MILBURN, Circuit Judge; and ZATKOFF, District Court Judge.*
 MERRITT, Chief Judge.
 
 
 1
 Defendants Edwards, Callier and Parker appeal from their convictions and sentences for possession with intent to distribute and conspiracy to distribute cocaine in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(B). Defendant Parker pleaded guilty to possession of 6.1 grams of cocaine base with intent to distribute. Defendants Edwards and Callier went to trial and were found guilty of both conspiracy and possession with intent to distribute. Defendant Edwards appeals the sufficiency of the evidence against him, a meritless claim. He also appeals from the District Court's denial of his request for a two-point reduction based on acceptance of responsibility, also a meritless claim. Defendant Callier appeals the District Court's admission of evidence regarding his arrest in New Jersey on August 19, 1993 and the circumstances surrounding the arrest (the "New Jersey evidence"), a trip he allegedly took for the purpose of purchasing cocaine in furtherance of the charged conspiracy. Callier claims that the New Jersey evidence is character evidence of "other bad acts" introduced for the improper purpose of proving his propensity to sell cocaine, and it was therefore inadmissible under Rule 404(b). His claim is baseless, because the acts in question occurred during the pendency of the alleged conspiracy, and they are within the scope of the indictment. They are not "other bad acts." Rule 404(b) is therefore inapplicable. And finally, Defendant Parker appeals his sentence. Although the trial court properly departed from the statutory minimum, contrary to Parker's assertions, Parker's second sentencing claim is valid. The trial court should have evaluated Parker's eligibility for a reduced sentence based on the Sentencing Guidelines' "safety valve" provision (U.S.S.G. § 5C1.2). If Parker qualifies under that provision, the court would be required to sentence him under the guidelines, without regard to the statutory minimum.
 
 
 2
 Therefore, the decisions of the District Court as to Defendants Edwards and Callier are hereby AFFIRMED. The sentence of Defendant Parker is VACATED and REMANDED for resentencing once his eligibility under § 5C1.2 has been determined.
 
 
 3
 * On January 4, 1994, Defendants Edwards, Callier, Parker, and eight others were named in a thirteen-count indictment. The indictment charged that between April, 1993 and October, 1993 the Defendants had engaged in a conspiracy to distribute cocaine in the Youngstown, Ohio area in violation of 18 U.S.C. § 841(a)(1). Each defendant was also charged with possession of cocaine base with intent to distribute in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(B). Defendant Parker pleaded guilty to one count of possession with intent to distribute 6.1 grams of cocaine base. He was sentenced to 46 months in prison with five years of supervised release. He appeals from his sentence. Defendants Edwards and Callier went to trial. At trial, the government's evidence centered on the undercover drug buys of two informants, Shepard and Hilton. The Defendants were alleged to be part of a group called the "Ready Rock Boys" who, in addition to socializing together, sold cocaine in an organized fashion. There was also testimony by friends and family members of the Defendants, as well as police officers. The jury found them both guilty.
 
 II
 A. United States v. Edwards
 1. Sufficiency of the Evidence
 
 4
 Conspiracy. Defendant Edwards' first assignment of error is that there was insufficient evidence to prove beyond a reasonable doubt that he was involved in a conspiracy to distribute cocaine. While he concedes that he sold cocaine to police informants, he claims that he did not know of or voluntarily join in any conspiracy to do so with others. In order to establish the defendant's guilt in a drug conspiracy, the Government must prove that there was a conspiracy, that the defendant knew of it, and that he or she knowingly and voluntarily joined it. United States v. Barrett, 933 F.2d 355, 359 (6th Cir.1991). It is not necessary for the Government to prove that there was a formal agreement among the parties. United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989). A jury finding of guilt will not be overturned on appeal unless, after reviewing the evidence in the light most favorable to the prosecution, this court is convinced that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Vincent, 20 F.3d 229, 232-33 (6th Cir.1994).
 
 
 5
 There is ample evidence to support Mr. Edwards' conspiracy conviction. For example, Mr. Shepard, one of the government informants, testified that he became a member of the "Ready Rock Boys" in 1990, and that his purpose in joining the group was to sell drugs. He testified that Defendants Edwards and McKinley were also members of the Ready Rock Boys, and he identified them both in pictures with other members of the group. Shepard testified that he bought crack from Edwards, and that he and Edwards cooked cocaine powder into crack together. (This testimony was supported by tape recordings.) In addition, Mr. Shepard testified that two others, Lavail and Johnson "worked" for Edwards, selling crack. This would constitute a conspiracy of which the Defendant was a knowing participant.
 
 
 6
 Defendant Edwards' mother, Jackie Bennett, also testified. She told the jury that "ready rock boys" is a slang term used to denote boys who sell "ready rocks" (i.e. cocaine which has already been "cooked" into crack). She also stated that "They call them my son's friends though the Ready Rock Boys," and later admitted, "I have a son that is a Ready Rock Boy." Joint Appendix at 156, 157 ("J.A."). Defendant Edwards seeks to minimize the impact of this testimony by pointing to other statements by Ms. Bennett, where she explains that all boys on Youngstown's south side who sell crack are referred to as "ready rock boys." Despite these alternate explanations, a rational juror could easily have inferred from Ms. Bennett's statements, in context, that her son was a member of a particular group who were called the "Ready Rock Boys," who acquired their name by selling crack as an organized group.
 
 
 7
 The testimony further indicates that on at least two occasions, when an informant named Hilton went to Defendant McKinley's home for drugs, McKinley immediately contacted Edwards, went to Edwards' house to pick up the drugs, and then sold them to Hilton. On one occasion, Hilton's wire picked up a conversation in which McKinley indicates that Edwards was aware that McKinley was buying in order to resell. Government's Exhibit 8/3-1 (McKinley to informant Hilton: "That ain't nothing to do with ... when I gave you that, I got that from Rick [Edwards], man. So now [Edwards]'s pressing up on me. He want to know if I got the money man.") A reasonable juror could easily conclude, based on all this evidence, that Edwards sold cocaine to McKinley with the knowledge and intent that he would sell it to someone else, rather than merely use it for his own personal use. There was ample, specific testimony sufficient to support a conclusion that Edwards was in a conspiracy to sell cocaine and was not, as he asserts, just an individual seller. See Barrett, 933 F.2d at 359. Therefore, his claim of insufficiency of the evidence as to the conspiracy must fail.
 
 
 8
 Possession. Defendant Edwards' also argues that there was insufficient evidence for a jury to find that he was guilty selling 13.4 grams of cocaine base on June 29, 1993 to informant Shepard because Edwards, "did not have sufficient skill to convert the cocaine base he sold to the informant" from powder cocaine into cocaine base (crack). Edwards' Brief at 14. It is not at all clear to this Court how the Defendant's cocaine conversion skills, or lack thereof, would have affected this case. He was charged with selling cocaine base because that is the substance which the informant handed to the police just after he made a purchase from the defendant. Whether or not he actually converted it himself is somewhat beside the point. Thus, there was sufficient evidence from which a rational juror could conclude that the Defendant possessed cocaine base with the intent to distribute. See Vincent, 20 F.3d at 232-33.
 
 
 9
 Even assuming for the sake of argument that Defendant Edwards' inability to convert cocaine powder to cocaine base could somehow affect his guilt or innocence, by his own admissions, Edwards did, in fact, know how to convert powder into base. The tape of the sale of crack by Edwards to Shepard on June 29, 1993 reveals that Edwards stated, "... I cooked up a fuckin' ounce [28 grams] the bitch only came out to twenty-three" (referring to the fact that five grams of product were lost in the conversion between powder and base). J.A. at 397. Although he attempts to latch onto statements made by Shepard during this conversation where Shepard gave him some advice on how to cook crack, as support for the notion that he did not know how to do so himself, his own statements speak for themselves. A rational juror could easily have found that Edwards knew how to convert cocaine powder into cocaine base. Therefore, even if a finding by the jury as to his cocaine conversion abilities were necessary, his conviction would not be flawed.
 
 2. Acceptance of Responsibility
 
 10
 Edwards also claims that, even though he chose to go to trial, he is entitled to a two-point reduction in offense level based on his acceptance of responsibility. See U.S.S.G. § 3E1.1(a). The trial court's factual determination regarding acceptance of responsibility will be upheld unless clearly erroneous. United States v. Barrett, 890 F.2d 855, 867 (6th Cir.1989). In the Guidelines in effect when these Defendant Edwards was sentenced, application note 2 to the acceptance of responsibility provision reads:
 
 
 11
 This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g. to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.
 
 
 12
 U.S.S.G. § 3E1.1, comment. (n. 2).
 
 
 13
 Defendant Edwards argues that he has accepted responsibility for the actual drug sales, and that his challenge to the conspiracy charge is therefore merely a challenge to the "application of a statute" to his case, so he should be entitled to a reduction under § 3E1.1. Edwards is asserting, however, that he did not conspire with others to sell cocaine. This constitutes a challenge to his "factual guilt," not merely the application of a statute. Thus, he is not entitled to the reduction.
 
 
 14
 Even assuming for the sake of argument that his challenge is a challenge to the "applicability of a statute," the decision as to whether the Defendant "clearly" demonstrated acceptance of responsibility lies with the District Court. In this case, defendant chose to go to trial and dispute his factual guilt, as was his right. He claimed at trial, and continues to claim, that he was not involved in a conspiracy, and that the "Ready Rock Boys" were not organized to sell cocaine. Thus, whatever admissions Defendant may have been willing to make as to his drug sales, we agree with the District Court that he has not "clearly demonstrated an acceptance of responsibility" for the crimes of which he was convicted. The District Court exercised its discretion against granting Edwards such a reduction. Its decision was not clearly erroneous, and it will therefore be upheld.
 
 B. United States v. Callier
 
 15
 Defendant Callier claims that the trial court improperly allowed the jury to hear evidence regarding his arrest in New Jersey on August 19, 1993 and the facts surrounding the arrest. He claims that this evidence is "character evidence," introduced to show his propensity to commit the charged crimes, in violation of Federal Rule of Evidence 404(b). Rule 404(b) provides:
 
 
 16
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ...
 
 
 17
 A trial court's decision to admit evidence is reviewed for abuse of discretion. United States v. Broadus, 7 F.3d 460, 465 (6th Cir.1993).
 
 
 18
 In order to invoke the protections of Rule 404(b), one must first show that the evidence relates to "other" crimes, that is, crimes other than the ones for which the Defendant is being prosecuted at that time. This is where Defendant Callier's assignment of error falls apart. The evidence at issue relates to Callier's arrest by the New Jersey Highway patrol on August 19, 1993, in a car which contained a total of $19,979 in cash. Victor Sepulveda, one of the men who was with Callier that day, testified that they were driving to New York to purchase cocaine. He also testified that it was their second trip, and that during the first trip they had secured 2.5 kilograms of cocaine. Reynolds, an associate of Sepulveda's, testified that during the month of September or October 1993 he gave Callier approximately nine ounces of the cocaine which he had obtained from his New York connection.
 
 
 19
 Callier asserts that this evidence was not related to the charged conspiracy, but rather, was evidence of a separate conspiracy between himself, Sepulveda and Reynolds, and thus, should be considered evidence of "other bad acts." The Government asserts that the New Jersey arrest and surrounding facts were evidence of his participation in the conspiracy, charged in the indictment, to sell cocaine with Edwards, Parker, and the eight other named defendants. In particular, the Government asserts that the New Jersey evidence was admitted to prove overt act nine of the indictment, namely, that Callier was transporting money from Ohio to New York in order to purchase cocaine.
 
 
 20
 The Government provides ample evidence to support their theory, clearly laying out Callier's involvement in the cocaine conspiracy during the months leading up to the August 19, 1993 arrest. First, Callier was placed in a van on April 24, 1993 driving co-defendant Rogers to a drug sale, and Callier participated in the conversation between the buyer and seller. Next, on June 30, 1993, Defendant Edwards told informant Shepard that "Tariton [Callier] once said ... he could bring his back to thirty-six to forty" (meaning that when Callier cooks one ounce--28 grams--of powder cocaine with baking soda to make crack, the resultant product weighs 36 to 40 grams). J.A. at 400. Then, on July 19, 1993, Callier sold informant Hilton 21.6 grams of crack at the house of co-defendant McKinley. During that sale, Callier asked Hilton about another kilogram of cocaine McKinley was expecting. On August 10, 1993, Hilton went to Callier's home to pay off a drug debt which arose before Hilton had become an informant. And finally, on August 18, 1993, when informant Shepard went to buy crack from Defendant Edwards, Edwards told him that Callier had a "straight connect" (meaning a direct connection for obtaining cocaine at better prices). All this evidence supports the Government's assertion that the New Jersey evidence was introduced to prove that Callier was acting in furtherance of the charged conspiracy when he went to New Jersey, not that he was involved in a separate conspiracy with Sepulveda and Reynolds, his two companions on the day in question.
 
 
 21
 The Government also points to the testimony of others: Jackie Bennett (Defendants Edwards' mother, who testified that Callier was one of the "Ready Rock Boys"), Shepard (who testified that he joined the "Ready Rock Boys" for the purpose of selling crack, and who pointed out pictures of Callier with the other Ready Rock Boys), Rodriguez (who testified that he purchased crack from Callier), and Neloms (who testified that Callier put him in touch with Hilton so he and Hilton could transact a drug sale). Again, the New Jersey evidence was clearly used to support the charged conspiracy, not some separate crime. Defendant Callier's suggestion that the New Jersey evidence was not related to the crimes charged in the indictment is totally unfounded. Thus, Rule 404(b) is not applicable and the admission of the evidence was not in error.
 
 C. United States v. Parker
 1. Departure Below the Statutory Minimum
 
 22
 Defendant Parker's first claim is that the District Court's departure downward from the statutory minimum in his case was inadequate. The Defendant has a prior conviction which subjects him to a statutory mandatory minimum sentence of ten years (120 months) in prison under 21 U.S.C. § 841(b)(1)(B)(iii). Section 5G1.1(b) of the sentencing guidelines provides that, "[i]f application of the guidelines results in a sentence below the minimum sentence required by statute, the statutory minimum shall be the guideline sentence." Two statutes, however, 18 U.S.C. § 3553(e) and 28 U.S.C. § 994(n), provide that, under certain circumstances, substantial assistance in the investigation or prosecution of another person who has committed an offense may justify a sentence below a statutorily required minimum sentence. The sentencing guidelines take these statutes into account at § 5K1.1.
 
 
 23
 In this case, the government moved for a two-level reduction in sentence under 18 U.S.C. § 3553(e) and 28 U.S.C. § 994 based on Defendant Parker's substantial assistance. Thus, the District Court was free to depart downward from that statutory minimum. As a result, rather than being sentenced to 120 months in prison, Defendant Parker was sentenced to 46 months. Despite this significantly reduced sentence, Defendant Parker argues that he should have been sentenced under the guidelines without regard to any statutory minimum at all, which would have resulted in a sentence of 30 to 37 months.
 
 
 24
 Defendant Parker pleaded guilty to selling 6.1 grams of cocaine base, which, absent a statutory minimum, would correspond to an initial base offense level of 26.[1] U.S.S.G. § 2D1.1(c)(7) (Drug Quantity table). Instead of using base offense level 26, however, the court chose to take account of the statutory minimum, which was applicable to Defendant Parker because of his prior conviction, and set the initial base offense level at 30, the first level for which the sentencing range includes the applicable statutory minimum of 120 months. Both the government, the Defendant, and the court below agreed that the Defendant merited a total of seven levels of reduction in sentence.[2] If one were to calculate the Defendant's sentence starting at base offense level 26, as the Defendant suggests, the seven levels of reduction and criminal history category would lead to a sentence of 30-37 months. See U.S.S.G., Chapter Five, Part A (Sentencing Table). If one starts, as the District Court did, at base offense level 30, the corresponding sentence is 46-57 months. Id. Although the request for downward departure freed the trial court from the statutory minimum, the ultimate amount of reduction was within the trial court's discretion. Defendant's arguments in favor of an even lower sentence are therefore baseless.
 
 
 25
 Defendant's first argument is that the existence of a statutory minimum has no effect on defendant's base offense level. Basically, he seeks to read § 5G1.1(b) out of the sentencing guidelines, relying on two cases: United States v. Taylor, 882 F.2d 1018, 1032 (6th Cir.1989), rev'd on other grounds, 495 U.S. 575 (1990) (sentencing guidelines adopt, rather than displace, applicable statutory minimum sentence) and United States v. Tisdale, 921 F.2d 1095 (10th Cir.1990), cert. denied, 502 U.S. 986 (1991) (remand required because sentencing court improperly treated mandatory minimum sentence as guidelines sentence without calculating criminal history category or offense level). The reliance is misplaced. Neither of the cases cited by Defendant provides support for his construction of the guidelines.
 
 
 26
 Defendant's second argument for applying a base offense level of 26 is that the Government waived its right to seek a statutory enhancement of Defendant's sentence when it recommended a departure from the Guidelines based on substantial assistance under 18 U.S.C. § 3553(e) and 28 U.S.C. § 994. Defendant relies on application note 7 to § 2D1.1 of the guidelines, which provides that,
 
 
 27
 Where a mandatory (statutory) minimum sentence applies, this mandatory minimum sentence may be "waived" and a lower sentence imposed (including a sentence below the applicable guideline range), as provided in 28 U.S.C. § 994(n) by reason of a defendant's "substantial assistance in the investigation or prosecution of another person who has committed an offense."
 
 
 28
 First, the statute employs the word "may," making it clear that the decision to impose a lower sentence is within the court's discretion. The Defendant would like this court to find that the acceptance of a downward departure for "substantial assistance" by the Government mandates a waiver of the statutory minimum. All the cases cited by the Defendant, however, recognize that the "substantial assistance" departure merely gives the district court the ability to impose a sentence lower than the statutory minimum, not that such a departure is required. United States v. Beckett, 996 F.2d 70, 74-75 (5th Cir.1993) (once prosecution has moved for downward departure under § 5K1.1, district court is authorized to depart below the statutory minimum sentence imposed); United States v. Cheng Ah-Kai, 951 F.2d 490, 492 (2nd Cir.1991) ("a district court has discretion to depart below the statutory minimum sentence following a government motion pursuant to § 5K1.1"); United States v. Floyd, 738 F.Supp. 1256, 1258 (D.Minn.1990) (by granting the government's motion for relief from statutorily required minimum sentence, court is relieved of the statutorily mandated imposition of a five year term of imprisonment). See also United States v. Keene, 933 F.2d 711, 715 (9th Cir.1991) ("[O]nce the government filed a motion for departure based upon [the Defendant's] substantial assistance, it was within the sentencing court's authority to exercise its discretion in determining the appropriate extent of departure."). Cf. United States v. Wade, 936 F.2d 169 (4th Cir.1991) (District Court has no authority to downward depart from a mandatory minimum sentence absent an appropriate motion by the government). Compare United States v. Rodriguez-Morales, 958 F.2d 1441, 1443 (8th Cir.), cert. denied, 506 U.S. 940 (1992) (motion for substantial assistance departure under U.S.S.G. § 5K1.1 authorizes departure from the guidelines sentence only, not departure from a statutory minimum; the only authority to depart below the statutory minimum exists in 18 U.S.C. § 3553(e)).
 
 
 29
 Defendant Parker's disagreement with the method the court below used to arrive at his sentence is without merit. In this case, the court chose to impose a sentence lower than the statutory minimum by calculating the sentence in the manner described above. The Defendant can point to no case which requires a court to depart below the statutory minimum merely because the Government has made a motion for a downward departure based on substantial assistance, as provided in 18 U.S.C. § 3553(e) and 28 U.S.C. § 994. Once a downward departure based on substantial assistance has been requested, it is clear that the District Court has the authority to depart downward from the statutory minimum. The amount of the departure, however, is within the discretion of the trial court.
 
 2. Safety Valve
 
 30
 Finally, Defendant contends that he was entitled to be sentenced pursuant to the "safety valve" provision of § 5C1.2 of the guidelines and 18 U.S.C. § 3553(f). The guidelines provision provides that,
 
 
 31
 In the case of an offense under 21 U.S.C. § 841, 844, 846, 960, or 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. Section 3553(f)(1)-(5) set forth verbatim below:
 
 
 32
 (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
 
 
 33
 (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
 
 
 34
 (3) the offense did not result in death or serious bodily injury to any person;
 
 
 35
 (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
 
 
 36
 (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.
 
 
 37
 (emphasis added). Where the Defendant requests consideration under this provision, the court should determine whether the Defendant meets the criteria set forth. See United States v. Booker, 71 F.3d 685, 691 (7th Cir.1995) ("Because Mr. Booker now has only one criminal history point, the district court must determine whether Mr. Booker qualifies for the "safety valve" provision....) (emphasis added).
 
 
 38
 The Defendant asserts that he meets all the criteria of the above safety valve, and that it should have been applied to him. This assertion, based on the record before this Court, appears to be correct. The Government responds that the issue is waived because it has been raised for the first time on appeal. At page twelve of the transcript of the Defendant's sentencing hearing, however, the following exchange took place between the probation officer (Dodds), Parker's attorney (Baker), and the court:
 
 
 39
 Dodds: If you find it under the safety valve provision, then you can go by just taking apart from the guidelines and throw it out. The safety valve, you can have one point and apply the new safety valve provision. I have some information if you would like to refer to the new safety valve provision.
 
 
 40
 Court: They are going to write volumes about these sentencing provisions. They have already.
 
 
 41
 Dodds: I know.
 
 
 42
 Court: Anything else?
 
 
 43
 Baker: Yes, your Honor. The safety valve, if he only has one criminal history point, provides a safety ground to what I argued to you a moment ago. I wanted to argue those are two separate issues, either of which may provide an independent basis for imposing the guidelines as opposed to the statutory sentence.
 
 
 44
 Thus, it appears that the Defendant did raise the issue. The District Court does not appear to have given any consideration to the safety valve or its application to this case. Because its provisions are mandatory, and it appears that the Defendant may meet the criteria, the District Court must re-sentence the defendant after his eligibility under the safety valve has been ruled upon.
 
 III
 
 45
 For the foregoing reasons, decisions of the District Court as to Defendants Edwards and Callier is hereby AFFIRMED. The sentence of Defendant Parker is VACATED and REMANDED for resentencing once his eligibility under § 5C1.2 has been determined.
 
 
 
 *
 The Honorable Lawrence P. Zatkoff, District Court Judge, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The District Court found that Defendant's Criminal History Category is I
 
 
 [2]
 Three levels down for acceptance of responsibility (§ 2D1.1), two levels down because he was a minor participant (§ 3B1.2), and two levels down for substantial assistance (5K1.1)