UNITED STATES of America, Appellant,

v.

Kelvin HARRINGTON.

No. 90–3176.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 6, 1991.

Decided Oct. 25, 1991.

Jennifer M. Anderson, Asst. U.S. Atty.,
with whom Jay B. Stephens, U.S. Atty.,
John R. Fisher, Roy W. McLeese, III, Patri-
cia Stewart and John Cox, Asst. U.S. At-

tys., Washington, D.C., were on the brief, for appellant.

Allan P. MacKinnon, Washington, D.C. (appointed by the Court), for appellee.

Bruce A. Baird, Washington, D.C., was on the brief, for amicus curiae.

Before EDWARDS, RUTH BADER GINSBURG and SILBERMAN, Circuit Judges.

Opinion for the court filed by Circuit Judge RUTH BADER GINSBURG.

Concurring opinion filed by Circuit Judge HARRY T. EDWARDS.

Dissenting opinion filed by Circuit Judge SILBERMAN.

RUTH BADER GINSBURG, Circuit Judge:

In sentencing Kelvin Harrington for narcotics offenses, the district court departed downward from the sentencing range indicated by the United States Sentencing Guidelines ("guidelines," cited as "U.S.S.G."). Harrington's potential for rehabilitation from drug addiction, the trial judge held, was a mitigating circumstance not adequately considered by the Sentencing Commission in promulgating the guidelines. *See United States v. Harrington*, 741 F.Supp. 968 (D.D.C.1990). The government appeals the sentence. We conclude that Harrington's post-offense rehabilitation is the type of conduct properly considered in determining whether he is eligible for a reduction in sentence under U.S.S.G. § 3E1.1 (acceptance of personal responsibility for one's criminal conduct).[1] We therefore vacate the sentence imposed by the district court and remand for resentencing consistent with this opinion.

## I. BACKGROUND

### A. *Review Standards*

Both the Sentencing Reform Act of 1984 and the guidelines authorize judicial departure from the guidelines sentencing range if the sentencing court

> finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(b); *see* U.S.S.G. Ch. 1, Pt. A, 4(b) (introductory policy statement on departures); *id.* § 5K2.0 (policy statement on grounds for departures). In deciding whether the Sentencing Commission adequately accounted for a particular circumstance, "the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C. § 3553(b). The determination whether a particular factor is an appropriate ground for departure "involves a question of statutory interpretation" over which this court exercises "plenary review." *United States v. Burns*, 893 F.2d 1343, 1345 (D.C.Cir.1990), *rev'd on other grounds*, — U.S. —, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991).

Once a factor is established as "a legally permissible basis for departure," however, we accord "broad deference to the district court's judgment as to the appropriateness of considering th[e] factor, and we will uphold the departure so long as it is reasonable." *Id.* at 1345 (citing 18 U.S.C. § 3742(e)(4)). Fact findings underlying the sentencing court's decision to depart will not be disturbed unless clearly erroneous. *Id.* at 1345–46 (citing *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.), *cert. denied*, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989)).

---

**1.** Section 3E1.1 provides:

*Acceptance of Responsibility*

(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.

(b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.

(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

## B. *Harrington's Sentence*

In sentencing Harrington, the district court held that

> the Guidelines and the official comment, including the Commission's rejection of addiction as a factor in sentencing [in U.S.S.G. § 5H1.4 ¶ 2], provide no evidence of consideration of a first offender drug addict's probable success in drug treatment as a factor in sentencing and the absence of consideration of this mitigating factor constitutes a basis for departure where expert opinion and other evidence leads to a finding that successful treatment for drug addiction is likely.

*Harrington*, 741 F.Supp. at 976.[2] The court found that Harrington "is an addict who has demonstrated that he is amenable to successful drug treatment in prison which is likely to curb any criminal propensities." *Id.* at 977. This determination rested on several grounds: "uncontroverted expert opinion ... that successful treatment of Harrington's addiction is likely and that future criminal activity by him is unlikely"; the corroborative conclusions regarding drug treatment of prisoners contained in *Understanding Drug Treatment,* an Office of National Drug Control Policy White Paper issued in June 1990; the positive evaluations of Harrington's partic-

ipation in drug treatment programs during his pretrial release and post-trial incarceration; and the court's own "observations of Harrington on his several court appearances before and during the jury trial and during the sentencing proceedings." *Id.* at 976–77. The court consequently departed downward from Harrington's guidelines sentencing range of 97–121 months and imposed the statutory minimum prison term of 60 months, followed by four years of supervised release. *Id.* at 976–78.

## II. DISCUSSION

█ Federal courts of appeals that have faced claims of post-offense drug rehabilitation as a basis for downward departure have resolved the issue under one or the other of two arguably applicable guidelines provisions, section 3E1.1 or section 5H1.4. The First and Fourth Circuits regarded evidence of successful drug treatment between arrest and sentencing as post-offense conduct within the scope of U.S.S.G. § 3E1.1, which permits a two-level reduction in offense level "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a);[3] *see United States v. Sklar,*

---

**2.** Congress directed the Sentencing Commission to consider the potential relevance to sentencing of a number of specific offender characteristics. 28 U.S.C. § 994(d). Chapter 5, Part H of the guidelines contains ten policy statements on these specific offender characteristics. U.S.S.G. § 5H1.4 addresses "Physical Condition, Including Drug Dependence and Alcohol Abuse," and provides in pertinent part:

> Drug dependence or alcohol abuse is not a reason for imposing a sentence below the guidelines. Substance abuse is highly correlated to an increased propensity to commit crime. Due to this increased risk, it is highly recommended that a defendant who is incarcerated also be sentenced to supervised release with a requirement that the defendant participate in a substance abuse program. If participation in a substance abuse program is required, the length of supervised release should take into account the length of time necessary for the supervisory body to judge the success of the program.

U.S.S.G. § 5H1.4 ¶ 2.

The *Harrington* trial judge saw an "obvious negative pregnant" in section 5H1.4 ¶ 2 that conveyed this message: "successful treatment

for drug abuse could lead to a reduced propensity to commit crime and thereby reduce the need for the longer periods of incarceration contemplated by the Guidelines with respect to drug law violations." *Harrington*, 741 F.Supp. at 975–76. In the district court's view, the "Sentencing Commission's rejection of addiction as a sentencing factor is no indication of its consideration of susceptibility to successful treatment for drug addiction, rather, the negative pregnant tends to confirm the opposite reading of the Guidelines and the official comments." *Id.* at 976.

**3.** The official commentary to this "Acceptance of Responsibility" provision lists several examples of conduct appropriately considered in determining whether a defendant qualifies for the reduction, including "voluntary termination or withdrawal from criminal conduct or associations." *Id.,* comment. (n. 1(a)). According to the Commission, the section 3E1.1 reduction "recognizes legitimate societal interests. For several reasons, a defendant who clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense by taking, in a timely fashion, one or more of

920 F.2d 107, 115–17 (1st Cir.1990); *United States v. Van Dyke*, 895 F.2d 984, 986–87 (4th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 112, 112 L.Ed.2d 82 (1990). A two-level reduction in Harrington's case would yield a sentencing range of 76–97 months, in contrast to the unreduced 97–121 months range, and the 60 months the district court imposed.

The Fourth Circuit in *Van Dyke* decided that the two-level reduction under section 3E1.1 precluded any additional downward departure. 895 F.2d at 987.[4] The First Circuit, however, said in *Sklar* that "a defendant's rehabilitation might, on rare occasion, serve as a basis for a downward departure [exceeding two levels], but only when and if the rehabilitation is 'so extraordinary as to suggest its presence to a degree not adequately taken into consideration by the acceptance of responsibility reduction.'" 920 F.2d at 116 (citation omitted).[5]

The Third and Ninth Circuits considered post-arrest drug rehabilitation under the rubric "Specific Offender Characteristics," governed by Chapter 5, Part H of the guidelines, rather than as post-offense conduct demonstrating acceptance of responsibility under section 3E1.1. *See United States v. Martin,* 938 F.2d 162, 163 (9th Cir.1991); *United States v. Pharr,* 916 F.2d 129, 132–33 (3d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991). Both circuits interpreted section 5H1.4, *see supra* note 2, "to mean that dependence upon drugs, or separation from such a dependency, is not a proper basis for a downward departure from the guidelines." *Id.* at 133; *Martin,* 938 F.2d at 164 (quoting *Pharr*). The Ninth Circuit in *Martin* emphasized the Commission's recommendation that drug treatment be a required component of post-incarceration supervised release. That recommendation, the Ninth Circuit said, was a clear indication of "intent that rehabilitation from drug abuse be factored into post-sentencing supervised release and not be recognized as a ground for departure." *Id.*[6]

The Third Circuit in *Pharr* ruled more cautiously. It considered and rejected, on

---

the actions listed [in the commentary] (or some equivalent action) is appropriately given a lower offense level than a defendant who has not demonstrated acceptance of responsibility." *Id.,* comment. (background). The Commission also acknowledged the "unique position" of the sentencing judge "to evaluate a defendant's acceptance of responsibility," and stated that "[f]or this reason, the determination of the sentencing judge is entitled to great deference on review." *Id.,* comment. (n. 5).

**4.** The Fourth Circuit reasoned that consideration of Van Dyke's post-offense "rehabilitative" conduct was "limited to application of acceptance of responsibility because it is the type of 'equivalent' conduct encompassed within the framework of U.S.S.G. § 3E1.1." *Van Dyke,* 895 F.2d at 987. Because Van Dyke's attempts to rehabilitate himself from drug abuse fit within section 3E1.1, the Fourth Circuit concluded, his post-offense conduct was "adequately taken into consideration by the Sentencing Commission" and thus could not "serve as an independent basis for departure." *Id.*

**5.** The First Circuit stressed that "merited downward departures for rehabilitation [beyond a two-level acceptance of responsibility reduction] are likely to be few and far between," and concluded that "Sklar's successful completion of a residential substance abuse program," which

was a required condition of his pretrial release, "seem[ed] insufficiently out of the ordinary to jettison [the] rule" that "efforts to overcome ... drug addiction ... will ordinarily not support a downward departure." *Sklar,* 920 F.2d at 116–17.

**6.** The Commission's prescription in section 5H1.4 ¶ 2 that drug treatment follow incarceration comports with the congressional instruction that "the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment." 28 U.S.C. § 994(k). While Congress thus rejected imprisonment as a means to achieve rehabilitation, it also recognized "correctional treatment" as a proper goal of sentencing. *See* 18 U.S.C. § 3553(a)(2)(D) (directing sentencing court to consider four sentencing goals, including "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). *See also Mistretta v. United States,* 488 U.S. 361, 367, 109 S.Ct. 647, 652, 102 L.Ed.2d 714 (1989) (Sentencing Reform Act "rejects imprisonment as a means of promoting rehabilitation ... and ... states that punishment should serve retributive, educational, deterrent and incapacitative goals").

the facts of the *Pharr* case, the application of section 3E1.1 to the particular defendant's post-offense drug rehabilitation. *See Pharr*, 916 F.2d at 131–32. The defendant in *Pharr* had entered a guilty plea to one count each of sale of stolen U.S. treasury checks and possession of stolen mail. *Id.* at 130. The district court departed downward from the guidelines upon finding that "Pharr had made a conscientious effort to overcome his heroin addiction" and that a jail sentence "would disrupt his drug rehabilitation treatment." *Id.*

Pharr's post-offense rehabilitative conduct, the Third Circuit held, was not within the ambit of section 3E1.1. *Id.* at 131. The appellate court reasoned that section 3E1.1 was intended to credit a defendant for "either accepting responsibility for the offense for which he is being sentenced or mitigating the effects of his criminal activity." *Id.* Pharr's efforts to overcome substance abuse did not manifest acceptance of responsibility "for selling stolen treasury checks," the court observed, nor was his entrance into a drug rehabilitation program an "attempt[ ] to rectify the harm he caused." *Id.* Rather, Pharr's drug rehabilitation attempt qualified as "[s]elf-improvement," and thus was "not the type of conduct contemplated by the acceptance of responsibility provisions of the guidelines." *Id.* The appeals court in *Pharr* regarded *Van Dyke* as "clearly distinguishable" on its facts "since Van Dyke's drug rehabilitation efforts were directly related to the crime for which he was being sentenced." *Id.* at 132. The Third Circuit expressly reserved "the issue of whether drug rehabilitation can be considered acceptance of responsibility for section 3E1.1 purposes in sentencing a defendant for a drug-related offense," and "offer[ed] no indication as to how [it] would rule if that issue were squarely before" the court. *Id.*

The Ninth Circuit in *Martin* made no reference to the acceptance of responsibility provision in its review of the district court's refusal to depart downward based on Martin's success in a residential drug treatment program while on pretrial release. *See Martin*, 938 F.2d 162. The defendant in *Martin* had entered a plea of guilty to bank robbery, and the decision contains no suggestion that his crime was related to his substance abuse. It is thus unclear whether the Ninth Circuit would regard post-offense drug rehabilitation as a permissible basis for a two-level reduction under section 3E1.1 in circumstances where rehabilitation could be viewed as manifesting acceptance of responsibility for one's criminal conduct.

*Amicus Curiae*[7] distinguishes the decisions of the First, Third, Fourth, and Ninth Circuits by stressing the presence in *Harrington* of "scientific findings of likelihood of successful treatment." Brief of *Amicus Curiae* at 10. To predicate unlimited departure from the guidelines on expert testimony as to the defendant's potential for successful rehabilitation or propensity for recidivism, however, is troubling. Defendants without access to the psychiatric evaluation afforded Harrington might be similarly situated, yet unable to make the case that he did for leniency. The disparate sentences that could result would in turn frustrate one of the prime objectives Congress had in view when it established the Commission and directed it to develop the guidelines. *See* 28 U.S.C. § 991(b)(1)(B) (asserting purpose of "avoiding unwarranted sentencing disparities"). Reliance on "scientific" predictions, moreover, could potentially transform sentencing under the guidelines into a battle of experts, with the prosecution seeking to prove that the defendant is not likely to succeed in drug treatment and is, indeed, a poor candidate for rehabilitation.

The sole court of appeals decision cited in support of downward departure based on drug rehabilitation, as here ordered by the district court, is *United States v. Maddalena*, 893 F.2d 815 (6th Cir.1989). In *Maddalena*, the Sixth Circuit remanded a case

---

7. We granted the motion of National Association of Criminal Defense Lawyers, Inc. ("NACDL") to appear as amicus curiae and brief the sentencing issue raised in the government's appeal. NACDL is represented by the same counsel appointed to appear as amicus curiae in the district court. *See Harrington*, 741 F.Supp. at 971.

for resentencing because the sentencing judge "incorrectly believed that he lacked any authority to consider defendant's mitigating circumstances as well as the discretion to deviate from the guidelines." *Id.* at 818.[8] Because the guidelines expressly authorize deviation from a sentencing range upon finding aggravating or mitigating circumstances inadequately considered by the Sentencing Commission, *id.* (citing U.S.S.G. § 5K2.0), the appeals court remanded, "instructing the [sentencing] judge that he may, but need not consider the defendant's efforts to stay away from drugs as a basis for departing from the guidelines." *Id.* The Sixth Circuit did not refer to section 3E1.1 (acceptance of responsibility) or to section 5H1.4 (precluding downward departure for drug dependence) in its *Maddalena* analysis of the downward departure issue.

The district court in *Harrington* relied on *Maddalena* as support for the proposition "that a successful effort to overcome an addiction is a mitigating factor not considered by the Sentencing Commission." *Harrington,* 741 F.Supp. at 976; *see also Pharr,* 916 F.2d at 132; *Sklar,* 920 F.2d at 116; *Martin,* 938 F.2d at 163 (all citing *Maddalena*). The government persuasively argues, however, that *Maddalena* is distinguishable from *Harrington,* and from the decisions in *Sklar, Pharr, Van Dyke,* and *Martin.* *See* Brief for Cross–Appellant at 45–47. Unlike each of these cited cases, *Maddalena* did not concern *post-offense* rehabilitative efforts as a basis for downward departure from the guidelines. *See supra* note 8. *Maddalena* may stand for no more than a determination by the Sixth Circuit that a district court has discretion to consider mitigating circumstances in an individual defendant's background in deciding whether to impose a sentence outside the guideline range. *Cf. United States v. Lopez,* 938 F.2d 1293, 1294, 1298–99 (D.C.Cir.1991) (remanding for resentencing without deciding whether

youthful defendant's "particular history," notably his exposure to domestic violence, "warrant[s] or permit[s]" downward departure from guidelines).

The case that appears to lend the strongest support for Harrington's position and the sentence imposed on him by the district court is *United States v. Rodriguez,* 724 F.Supp. 1118 (S.D.N.Y.1989). Following his arrest on charges of selling $10 worth of crack to an undercover agent, Rodriguez "accomplished an impressive rehabilitation" in which he overcame his drug addiction, remained drug-free for nearly two years, reunited with his wife and children, assumed "the full responsibilities of the role of husband, father and provider," obtained employment, and took courses to improve his employment opportunities. *Id.* at 1119. The district court considered it "senseless, destructive and contrary to the objectives of the criminal law" to sentence Rodriguez to jail, and concluded that the Sentencing Reform Act and the guidelines permit downward departure "by reason of the personal characteristics of the offender." *Id.*

The court in *Rodriguez* stated that Congress, in passing the Sentencing Reform Act of 1984, intended to reduce sentencing disparities, but not to eliminate consideration of the personal characteristics of the offender. *Id.* at 1119–20. The court stressed the statutory direction that a sentence should be "sufficient, but not greater than necessary ... to provide just punishment ... [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C); *see Rodriguez,* 724 F.Supp. at 1120. This direction, the court said, "unquestionably envisions more severe sentences for defendants considered more likely to commit further crimes and less severe sentences for those unlikely to commit crimes." *Id.*

Upon review of the guidelines, the *Rodriguez* court concluded that the Sentencing

---

**8.** The defendant in *Maddalena* pled guilty to armed robbery and requested a downward departure from the sentencing range based on "his [pre-offense] efforts to stay away from drugs." *Maddalena,* 893 F.2d at 817. Maddalena "was aware of his drug dependency[,] made a conscious effort to deal with his problem," and had "managed to live a drug-free life for nine years." *Id.* at n. 1.

Commission had adopted an approach "somewhat different from what the statute anticipated." *Id.* at 1121. While "[t]he statute anticipated categorizing [both] offenses and offenders allowing departure only by reason of a circumstance 'not adequately considered by the Sentencing Commission,'" *id.* (quoting 18 U.S.C. § 3553(b)), the Commission "categorized offenses but not offenders" and "expressly acknowledged the need in the 'atypical' case for invocation of the departure power to give appropriate effect to personal characteristics." *Id.; see* U.S.S.G., Ch. 1, Pt. A, 4(b) (introductory policy statement on departures). In the *Rodriguez* court's view, the Sentencing Commission "expressly invited a freer exercise of departure than it would approve if it had attached scheduled values to the personal characteristics of the defendant." 724 F.Supp. at 1121.

No federal appellate court has adopted the *Rodriguez* court's analysis, however, and we are mindful of the extraordinary setting of that case. Rodriguez was convicted of a far less serious offense than was Harrington and had accomplished an arguably more impressive rehabilitation. The sentencing instructions for Rodriguez, moreover, were anomalous. The statute under which he was convicted, 21 U.S.C. § 845(a), required no term of imprisonment, but specified that imprisonment, if imposed, had to run for at least one year. The guidelines called for a minimum term of eight months. Without a departure, the judge would have been obliged to send Rodriguez to jail, though the statute did not so require, for a year's term, though the guidelines permitted four months less. *See Rodriguez*, 724 F.Supp. at 1119. *Rodriguez* thus does not seem to us a model properly followed in Harrington's case.

Recognizing that Congress and the Commission have not squarely addressed the issue we face, we find in the decisions of our sister circuits the most cogent discussion in *Sklar*, 920 F.2d at 115–17, and we follow the lead of that First Circuit judgment. We therefore hold that post-offense but pretrial drug rehabilitation effort may justify a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. We leave open the possibility that, "on rare occasion," a further reduction might be in order, "but only when and if the rehabilitation is 'so extraordinary as to suggest its presence to a degree not adequately taken into consideration by the acceptance of responsibility reduction.'" *Sklar*, 920 F.2d at 116 (citation omitted); *see* U.S.S.G. § 5K2.0 (a sentencing "court may depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines (*e.g.*, as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the guidelines level attached to that factor is inadequate"); *see also United States v. Lopez*, 938 F.2d at 1298–99 (D.C.Cir.1991) (question of whether defendant's exposure to domestic violence is proper basis for departure left open for district court's consideration on remand).

■ The district court did not address Harrington's eligibility for a reduction in sentence under section 3E1.1, possibly because Harrington consistently asserted his innocence of the charged offenses.[9] While a pretrial guilty plea "combined with truthful admission of involvement in the offense and related conduct" may "constitute significant evidence of acceptance of responsibility," U.S.S.G. § 3E1.1, comment. (n. 3), the guideline neither guarantees a sentence reduction to a defendant who enters a guilty plea, nor precludes reduction because of "a finding of guilt by the court or jury or the practical certainty of conviction at trial." U.S.S.G. § 3E1.1(b) & (c).

An application note to section 3E1.1 states that a defendant's admission of guilt and expression of remorse only after conviction at trial does not warrant a reduction

**9.** Harrington was charged with selling crack to an undercover officer and with possession with intent to distribute cocaine and crack. The second charge arose from a police raid on a dwelling, where Harrington was found in the kitchen with the seized drugs in plain view. At trial, Harrington claimed misidentification as to the undercover sale, and alleged that he was present in the raided apartment as a customer and not as a dealer.

for acceptance of responsibility. *Id.*, comment. (n. 2).[10] We do not read the note to rule out cause other than pretrial admission of guilt for an acceptance of responsibility reduction. To so read the note would diminish the force of the guideline itself, which states: "A defendant may be given consideration under this [acceptance of responsibility] section *without regard* to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial." *Id.* § 3E1.1(b) (emphasis supplied). The note does usefully clarify, however, that a defendant's *pretrial* behavior, not his post-trial confession or conversion, is the prime indicator of his acceptance of responsibility for criminal conduct.

■ The district court, therefore, legitimately may take into account that Harrington, although he admitted only purchasing drugs for personal use, *see supra* note 9, engaged *pretrial* in notable rehabilitative efforts, which continued throughout the year between conviction and sentencing. That conduct, we hold, may be found demonstrative of an acceptance of responsibility warranting a sentence reduction. Because the district court did not evaluate Harrington's rehabilitative efforts under section 3E1.1, the applicable guideline, we vacate the sentence and remand for reconsideration of the appropriate sentence. *See United States v. Bruce*, 939 F.2d 1053, 1057 (D.C.Cir.1991) (guidelines "accord 'great deference' to the sentencing judge who 'is in a unique position to evaluate defendant's acceptance of responsibility'") (quoting U.S.S.G. § 3E1.1, comment. (n. 5)).

### III. CONCLUSION

The district court incorrectly concluded that Harrington's effort to overcome his drug addiction was a mitigating circumstance not considered by the Sentencing Commission. Post-offense rehabilitative conduct, however, may manifest an acceptance of responsibility warranting a reduction in sentence under guideline section 3E1.1. We therefore vacate Harrington's sentence and remand for resentencing consistent with this opinion.

*It is so ordered.*

HARRY T. EDWARDS, Circuit Judge, concurring:

*The two clever swindlers had a good laugh as they got ready to leave the city. The nobles who were to carry the train were clutching at the air. Neither dared to admit that he couldn't see the Emperor's clothes.*

*And so the Emperor walked through the city under a magnificent canopy, and all the people cried, "Oh!" and, "Ah! The Emperor's new clothes are splendid!"*

*Not one person was willing to say that he was stupid or unfit for his job. Each pretended the Emperor's clothes were a great success.*

*"But he doesn't have anything on!" cried one little child in the crowd.*

*"Just listen to the voice of the innocent!" said the father, trying to hush his child.*

*Whispers began to buzz about: "A child says the Emperor has nothing on."*

*"Yes!" cried all the people at last. "He doesn't have anything on!"*

*The Emperor's heart almost stopped beating. He knew the little child was right. But he thought, "The procession*

---

**10.** The note reads:

This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.,* to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

*must go on." So he stood a little straighter and walked a bit faster. And the nobles hurried to keep up with him, carrying a train that wasn't even there.*

HANS CHRISTIAN ANDERSEN, THE EMPEROR'S NEW CLOTHES (Pictureback ed., Random House 1978).

### I.

Like the Emperor's new clothes, the Sentencing Guidelines are a bit of a farce. I recently overheard a respected member of the criminal bar say, "I'll take judicial discretion any day—the Guidelines are a joke!" There are more than a few judges across the country who, in greater or lesser degree, share this critical view of the Guidelines.[1] In this case, I join in Judge Ruth B. Ginsburg's excellent opinion for the majority, because I think it reaches the correct result under the Guidelines, which I am bound by law to enforce. I write separately, however, to express my profound concerns about the efficacy of the Guideline system.

We are told that the Guidelines are fair because they ensure "uniformity" in sentencing. Equally guilty persons receive equally stringent sentences, so it is said. *See, e.g.,* United States Sentencing Commission, *Guidelines Manual,* Ch. 1, Pt. A(3), p.s. (Nov. 1990) ("U.S.S.G."). But, as we have come to learn, the Guidelines are rigid in formulation and, thus, often produce harsh results that are patently unfair because they fail to take account of individual circumstances that might militate in favor of a properly "tailored" sentence. *See, e.g.,* JUDICIAL CONFERENCE OF THE UNITED

STATES, REPORT OF THE FEDERAL COURTS STUDY COMMITTEE 135–140 (1990) ("1990 STUDY COMMITTEE REPORT") (criticizing "undue rigidity" of Guideline sentencing and recommending reforms); Albert W. Alschuler, *The Failure of Sentencing Guidelines: A Plea for Less Aggregation,* 58 U.CHI. L.REV. 901, 915–24 (1991) (criticizing unfairness and disparities created by Guidelines); Charles J. Ogletree, Jr., *The Death of Discretion? Reflections on the Federal Sentencing Guidelines,* 101 HARV.L.REV. 1938, 1953–54 (1988) (criticizing Guidelines' failure to allow adequate consideration of offender characteristics).

We also have come to understand that the Guidelines do not, by any stretch of the imagination, ensure uniformity in sentencing. Assistant U.S. Attorneys ("AUSAs") have been heard to say, with open candor, that there are many "games to be played," both in charging defendants and in plea bargaining, to circumvent the Guidelines. Because of this reality, sentences under the Guidelines often bear no relationship to what the Sentencing Commission may have envisioned as appropriate in any given case.

The first "game" to be played under the Guidelines occurs in connection with the charging decision. The confluence of the Guidelines' restriction of judicial discretion and the enactment of mandatory minimum sentences for many drug crimes[2] has placed enormous power in the hands of the AUSA,[3] effectively "replac[ing] judicial discretion over sentencing with prosecutorial discretion." *United States v. Kikumura,* 918 F.2d 1084, 1119 (3d Cir.1990) (Rosenn, J., concurring). Consider the case of a defendant who is charged with possessing

---

1. *See* Appendix of Cases and Authorities, *infra.*

2. These mandatory minimum sentences were enacted in the Anti–Drug Abuse Act of 1986, PUB.L. No. 99–570, §§ 1001–1009, 100 Stat. 3207, 3207–2 to 3207–8 (codified in scattered sections of 18 U.S.C. and 21 U.S.C.). The mandatory minimums have met with strenuous criticism by judges and commentators. *See* 1990 STUDY COMMITTEE REPORT, *supra,* at 133–34 (noting near universal judicial opposition to mandatory minimum sentence provisions and urging their repeal). Even the Sentencing Commission seems to agree. *See* UNITED STATES SENTENCING COMMISSION,

MANDATORY MINIMUM PENALTIES IN THE FEDERAL CRIMINAL JUSTICE SYSTEM 33–34 (1991) (concluding that mandatory minimums may create unwarranted sentencing disparity).

3. *See United States v. Roberts,* 726 F.Supp. 1359, 1366 n. 46 (D.D.C.1989) ("It is a singularly unimaginative prosecutor who, with the use of these two instruments [the Guidelines and the mandatory minimums], is unable to dictate with almost unfailing precision exactly what the sentence will be."), *rev'd sub nom. United States v. Doe,* 934 F.2d 353 (D.C.Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 268, 116 L.Ed.2d 221 (1991).

ten grams of crack cocaine with intent to distribute—an.offense carrying a Guideline sentence of 63–78 months for a defendant with no criminal record, and a mandatory minimum sentence of five years. *See* U.S.S.G. § 2D1.1(c)(9); 21 U.S.C. § 841(b)(1)(B)(iii) (1988). If the prosecutor elects to add a weapons charge in connection with the drug offense, the Guideline range goes to 78–97 months and the mandatory minimum rises to ten years. *See* U.S.S.G. § 2D1.1(b)(1); 18 U.S.C. § 924(c)(1) (1988). The prosecutor also may choose to assert certain subsidiary facts which will affect the sentence,[4] such as committing the offense at or near a school, or distributing to a minor—both of which add at least two offense levels (a minimum enhancement of 19 months in my hypothetical). *See* U.S.S.G. § 2D1.2(a)(1). The only way for the defendant to escape these lengthy minimum terms is to cooperate with the government in the hope that his assistance will be "substantial" enough to induce the prosecutor to make a motion for downward departure, *see id.* § 5K1.1; that decision, however, rests in the prosecutor's discretion.[5]

The second disparity-creating game to be played—this one by prosecutors and defense attorneys in collaboration—is the plea bargaining process. By offering a plea, defense counsel may be able to cut a deal with a prosecutor to "bend the rules." However, whether the rules actually get bent may depend upon the luck of the draw in judicial assignment: if the trial judge is willing to look the other way, the facts can be manipulated and the Guidelines ignored because no appeal will be taken by the

prosecutor. *See* 1990 STUDY COMMITTEE REPORT, *supra*, at 138 ("some prosecutors (and some defense counsel) have evaded and manipulated the guidelines in order to induce the pleas necessary to keep the system afloat"); Marcia Chambers, *Probation Officers Sit in Judgment*, NAT'L L.J., April 16, 1990, at 13 (*"Probation Officers"*) (noting prevalence of "secret deals" between prosecutors and defense attorneys).

Assistant U.S. Attorneys are under a general policy mandate not to drop readily provable criminal counts against a defendant. *See* U.S. DEPARTMENT OF JUSTICE, PROSECUTORS HANDBOOK ON THE SENTENCING GUIDELINES 46–47 (1987). But it is well-understood that AUSAs can and do drop counts if a defendant is perceived to be less culpable than the Guidelines might indicate, or if dropping the count is necessary to induce a plea. In addition (or as an alternative) to dropping counts, the AUSA also may vary the subsidiary facts asserted in a given case, thereby changing the sentence. Under the Guidelines, the quantity of drugs involved in a drug offense, *see* U.S.S.G. § 2D1.1, and the amount of money involved in theft and fraud-related offenses, *see id.* § 2B1.1, control the base offense level for sentencing. AUSAs, often in plea bargains, can affect sentencing by "adjusting" the amounts of drugs and money claimed to be involved in a criminal charge. *See The Old Days, supra* note 5, at 13 (noting rising prevalence of "fact bargaining"). Thus, two defendants caught with the same amount of drugs—even in the same transaction—can be sentenced differently, even when all other things appear to be equal.[6]

---

**4.** Of course, such subsidiary facts may be ascertained and used in the Guideline computation by the Probation Officer or the sentencing judge even if the prosecutor does not raise them. In practice this is unlikely, however, because the defendant, who is the major potential source of offense information besides the prosecutor, is unlikely to volunteer incriminating facts.

**5.** As one practitioner has lamented, "There was a time you could go before a judge and try to get a break for your client. Now the judge's hands are tied by the guidelines and so you go to a prosecutor and he may lower the sentence." Marcia Chambers, *The Old Days: When a Plea*

*Was a Plea . . .*, NAT'L L.J., November 6, 1989, at 13 (*"The Old Days"*) (quoting Albert Alschuler, Professor of Criminal Law at University of Chicago). One wonders whether the Guidelines, in transferring discretion from the district judge to the prosecutor, have not left the fox guarding the chicken coop of sentencing uniformity.

**6.** As perhaps best explained by Judge Greene of the District Court for this District:

Because of the many options available to him, the prosecutor is free to introduce as much sentencing disparity into the system as he may choose. Prosecutors, sometimes for good reasons, sometimes for bad—just like

Yet another glitch in the process is the Probation Officer, the person assigned to "characterize" the defendant so that "points" for upward and downward adjustments can be assigned pursuant to the Guidelines. *See* FED.R.CRIM.P. 32(c)(2)(B). Under the Guidelines, the Probation Officer acts as both investigator and fact-finder.[7] Enormous potential power rests in his or her hands, for how the Probation Officer chooses to characterize the defendant may add years of confinement to a jail term. For example, the Probation Officer may find that the defendant was a ring-leader in the offense (which adds four offense levels, *see* U.S.S.G. § 3B1.1(a)); that he abused a position of trust (adding two levels, *see id.* § 3B1.3); that he obstructed justice (adding two levels, *see id.* § 3C1.1); or that he is not truly contrite (foreclosing the possibility of a downward adjustment for acceptance of responsibility, *see id.* § 3E1.1).[8]

Perhaps most importantly, the Probation Officer determines and evaluates the defendant's "relevant conduct"—that is, conduct (often uncharged) that is related to, but not part of, the offense for which conviction has been sought. *See id.* § 1B1.3. This determination can have a substantial impact on the applicable Guideline range. *See, e.g., United States v. Hill,* 943 F.2d 873, 875 (8th Cir.1991) (upholding sentence that was more than doubled as result of uncharged, "relevant" conduct); *Kikumura,* 918 F.2d at 1119 (concluding that departure from 27–33 month Guideline range to 210–262 month range would be reasonable, based primarily upon defendant's relevant conduct).

The Probation Officer may be accountable to almost no one, however, save those situations in which the Officer elects to work in concert with the U.S. Attorney's Office.[9] Nor is the Presentence Report subject to public scrutiny. Although it is always possible for a defendant or a prosecutor to challenge the contents of the Report, and it is also possible for a trial judge to reject all or part of the Report, many trial judges appear to accept the Report as written. Of course, to the extent that there are errors or omissions in the Report, sentencing uniformity is undermined. *See* Peter B. Pope, *How Unreliable Factfinding Can Undermine Sentencing Guidelines,* 95 YALE L.J. 1258, 1260, 1275–77 (1986).

I address the gamesmanship of the Guidelines and the problematic roles of the AUSAs and Probation Officers only to emphasize that the Guidelines have not eliminated sentencing discretion. Rather, they have merely transferred it from district judges—who, whatever their perceived failings, are at least impartial arbiters who make their decisions on the record and subject to public scrutiny and appellate review—to less neutral parties who rarely are called to account for the discretion they

---

some judges before them—have done just that. Every district judge has witnessed, and witnessed many times, the bringing of wholly disparate charges against defendants whose conduct was essentially identical, the consequence being that the judge is required by the guidelines to impose sentences that he may consider, or that objectively are, arbitrary and discriminatory in every meaningful sense.

*Roberts,* 726 F.Supp. at 1365–66.

7. Some have questioned the competence of Probation Officers to fulfill this role. *See, e.g.,* 1990 STUDY COMMITTEE REPORT, *supra,* at 138 ("[T]here is a growing concern among judges, prosecutors and defense lawyers that the new sentencing regime imposes on these officers responsibilities as independent investigators and fact-finders—recommending decisions and legal judgments as to the application of rules to factual situations—for which they may not be particularly well trained or well suited.")

8. The Probation Officer's power to make these determinations sometimes may leave the defendant in a bind. As described by one commentator,

If the defendant tells the truth about the crime, the probation officer will add up the points differently. If the defendant denies the allegations, he or she may get a stiffer sentence for "obstruction;" if the defendant refuse[s] to talk at all, he or she could preclude credit for accepting responsibility for the crime.

*Probation Officers, supra,* at 13.

9. It appears that there may be situations, for instance, where a Probation Officer will contact an AUSA in advance of writing a Presentence Report and ask, "how much of a 5K1.1 departure do you want in this case?" The Report is then written accordingly.

wield.[10] Thus, the discretion and disparity game continues; it is only the players who have changed.

Viewed in this light, the Guidelines bring to mind the story *The Emperor's New Clothes.* We continue to enforce the Guidelines as if, by magic, they have produced uniformity and fairness, when in fact we know it is not so. In the view of many, myself included, the Guidelines merely substitute one problem for another, and the present problem may be worse than its predecessor. Nonetheless we, the district courts, the U.S. Attorney's Office [11] and the defense bar are forced to press on—through contorted computations, lengthy sentencing hearings and endless appeals—in the service of a sovereign who can be neither clothed nor dethroned.

## II.

This case is an example of how the Guidelines work at their worst. Although Harrington's crime was admittedly serious, he was a first offender and was addicted to narcotics. An experienced district judge, after extensive hearings complete with expert testimony, concluded that Harrington's prospects for drug rehabilitation were very good. Based upon this finding, the judge reasonably concluded that the eight-year sentence prescribed by the Guidelines

was unnecessary and excessive in Harrington's case. The judge's finding as to Harrington's likelihood of rehabilitation was not based on whimsy, as evidenced by the fact that the judge rejected a reduction for Harrington's co-defendant after finding that his prospects for rehabilitation were not as good. Nor was the judge's reasoning novel or adventurous. The Commission itself has determined that drug abuse leads to criminality, *see* U.S.S.G. § 5H1.4; logically, then, rehabilitation reduces the risk of recidivism and, therefore, the need for incapacitation. Yet, despite the propriety of the procedures followed by Judge Oberdorfer and the soundness of his sentencing rationale, the Guidelines require us to reverse.[12]

Ironically, Harrington might have avoided the need for a downward departure by playing the Guideline game more skillfully. Had his counsel been more cunning, the prosecutor more amenable, or the Probation Officer of a different stripe, the rules might have been bent a little and the departure question effectively mooted. For example, had the prosecutor (perhaps in response to a plea offer) deleted the words "five grams or more" from the second count of the indictment, the five-year mandatory minimum would not have applied,

**10.** Chief Judge McNichols of the Eastern District of Washington made this point forcefully in *United States v. Boshell,* 728 F.Supp. 632, 637–38 (E.D.Wash.1990). Noting that before the Guidelines, "disparities were controllable and tolerable because decisions were public and reviewable," he points out that under the current regime

Congress has ... shifted discretion from persons who have demonstrated essential qualifications to the satisfaction of their peers, various investigatory agencies, and the United States Senate to persons [AUSAs] who may be barely out of law school with scant life experience and whose common sense may be an unproven asset.

*Id.* at 637.

**11.** The Second Circuit recently increased the burden imposed upon AUSAs by the Guidelines in *United States v. Pimentel,* 932 F.2d 1029, 1033–34 (2d Cir.1991), ruling that if AUSAs are unwilling to engage in direct "sentence bargaining," they should calculate and inform the defendant of his likely Guideline range prior to

agreeing to a plea, in order to avoid unfair surprise.

**12.** In this regard, I am reminded of Judge Oberdorfer's opening comments at the 1987 Judicial Conference of this Circuit. Drawing an analogy between district judges facing the coming of the Guidelines and European youths facing the onset of the First World War, as described in Barbara Tuchman's *The Guns of August* (Bantam 1982), Judge Oberdorfer said:

I was thinking about that in terms of myself, and fantasized that I was a second lieutenant in the French Army, strolling on the Bois de Bologne, in the spring of 1914, not dreaming that, to mix metaphors, I would be squirming around in the mud of the Marne or the Somme or Verdon and get to my objective only to be machinegunned by the Court of Appeals.

JUDICIAL CONFERENCE OF THE UNITED STATES, PROCEEDINGS OF THE FORTY-EIGHTH JUDICIAL CONFERENCE OF THE DISTRICT OF COLUMBIA CIRCUIT 150 (West 1987). Judge Oberdorfer's remarks take on a certain prophetic cast in light of today's disposition.

*see* 21 U.S.C. § 841(b)(1)(B)(iii), and Harrington's offense level would have been reduced by between two and 14 levels, depending upon what lesser amount was charged. *See* U.S.S.G. § 2D1.1(c). But because the discretion to depart from the Guidelines was exercised publicly by the District Court, instead of behind closed doors at the U.S. Attorney's Office, reversal results.

The inequity wreaked in this case is endemic to the Guideline system. The appellate cases show a disparity between the relative ease of upward departure and the niggardly application of downward adjustments. The courts of appeals seem quick to find aggravating factors "unusual" enough to warrant upward departure, while mitigating factors are often rejected as "adequately considered" by the Sentencing Commission. *Compare United States v. Montenegro–Rojo,* 908 F.2d 425, 429–30 (9th Cir.1990) (upward departure justified by defendant's use of aliases, disciplinary problems while incarcerated and repeated misconduct on public trolley) *and United States v. Diaz–Villafane,* 874 F.2d 43, 50–52 (1st Cir.) (upholding sentence four times greater than Guideline range based on defendant's status as important drug supplier, use of adolescent couriers, and other factors), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989) *with United States v. Pozzy,* 902 F.2d 133, 138–39 (1st Cir.) (reversing downward departure based on defendant's pregnancy; "We think the Commission was fully aware that some convicted female felons are pregnant at the time of sentencing."), *cert. denied,* —— U.S. ——, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990) *and United States v. Brewer,* 899 F.2d 503, 509–11 (6th Cir.) (reversing downward departure predicated upon defendants' reputation in community, first offender status and remorse, despite district court's finding that "incarceration would serve no useful purpose"), *cert. denied,* —— U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990). The instant case illustrates the point.

The decision that we reach today is probably the correct one under the existing legal regime. Our result, however, is somewhat strained, and it encounters dissent among other courts. We attempt to find a middle ground between the wholehearted acceptance of drug rehabilitation as a ground for departure, *see United States v. Rodriguez,* 724 F.Supp. 1118, 1119 (S.D.N.Y.1989), and its complete rejection, *see United States v. Martin,* 938 F.2d 162, 163–64 (9th Cir.1991). Yet, because the relevant inquiry is whether the Sentencing Commission "considered" drug rehabilitation—presumably a "yes" or "no" proposition—our compromise approach is perhaps less than ideal. Moreover, I am troubled by the fact that our holding will benefit addicts who accomplish the laudable and difficult task of rehabilitation no more than they would have benefitted had they demonstrated sincere contrition to the Probation Officer; indeed, for those rehabilitated addicts who would otherwise qualify for credit under the "acceptance of responsibility" Guideline, U.S.S.G. § 3E1.1, our decision today holds no benefit at all.

I join the result because it is as good as any other result, and better than most, under our existing system. I am bound by the system, because Congress established it, *see* Sentencing Reform Act of 1984, PUB. L.No. 98–473, ch. II, 98 Stat. 1987, 1987–2040 (codified in scattered sections of 18 U.S.C., 26 U.S.C., 28 U.S.C., 29 U.S.C. and 49 U.S.C.), and the Supreme Court has upheld it, *see Mistretta v. United States,* 488 U.S. 361, 412, 109 S.Ct. 647, 675, 102 L.Ed.2d 714 (1989). Nonetheless, I tend to agree with the many judges who have spoken out against the Guidelines—they are indeed a bit of a farce.

## APPENDIX OF CASES AND AUTHORITIES

For judicial criticism of the Guidelines, *see,* for example: *United States v. Hill,* 943 F.2d at 877 (8th Cir.1991) (Heaney, J., concurring in part and dissenting in part) (arguing that doubling of sentence resulting from Guidelines' consideration of uncharged conduct violates due process);

*United States v. Davern,* 937 F.2d 1041, 1043–45, 1047 (6th Cir.1991) (Merritt, C.J.)

(holding that Guideline procedure for determining sentencing range violates enabling statute; where Guidelines produce sentence "greater than necessary" to comply with purposes of sentencing, district court may depart freely), *reh'g granted, decision and judgment vacated by* Order (Sept. 26, 1991);

*United States v. Pimentel,* 932 F.2d 1029, 1032–33 (2d Cir.1991) (Oakes, C.J.) (expressing concern that under Guidelines, defendants who plead guilty may be unaware of enhancements resulting from relevant conduct rules);

*United States v. Stanley,* 928 F.2d 575, 583 (2d Cir.) (Feinberg, J.) (noting with concern transfer of discretion from district judge to prosecutor under Guidelines), *cert. denied,* — U.S. —, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991);

*United States v. Kikumura,* 918 F.2d 1084, 1119 (3d Cir.1990) (Rosenn, J., concurring) (noting possible due process violation in Guidelines' transfer of power to prosecutor, which permits "manipulation of ... charge and sentencing");

*United States v. Gutierrez,* 908 F.2d 349, 354–55 (8th Cir.) (Heaney, J., dissenting) (arguing that government's unguided discretion in deciding whether to make § 5K1.1 motion violates due process), *vacated on reh'g en banc,* 917 F.2d 379 (8th Cir.1990);

*United States v. Allen,* 873 F.2d 963, 966–67 (6th Cir.1989) (Merritt, J., concurring) (finding Guidelines consistent with due process by concluding that they "should not be viewed as mandatory sentencing rules" and that district courts retain "wide range of discretion" to depart);

*United States v. Boshell,* 728 F.Supp. 632, 637–38, 641 (E.D.Wash.1990) (McNichols, C.J.) (holding Guidelines unconstitutional as applied and criticizing shift of discretion from judges to prosecutors);

*United States v. Roberts,* 726 F.Supp. 1359, 1364–67 (D.D.C.1989) (Greene, J.) (holding Guidelines unconstitutional on due process grounds based upon transfer of unreviewable discretion to prosecutor), *rev'd sub nom. United States v. Doe,* 934 F.2d 353 (D.C.Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 268, 116 L.Ed.2d 221 (1991);

*United States v. Curran,* 724 F.Supp. 1239, 1241 (C.D.Ill.1989) (Mihm, J.) (striking § 5K1.1 as unconstitutional on due process grounds), *overruled by United States v. Lewis,* 896 F.2d 246 (7th Cir.1990);

*United States v. Rodriguez,* 724 F.Supp. 1118, 1120–21 (S.D.N.Y.1989) (Leval, J.) (criticizing Guidelines' lack of consideration of offender characteristics);

*United States v. Donatiu,* 720 F.Supp. 619, 624 n. 2 (N.D.Ill.1989) (Rovner, J.) (characterizing Guidelines as "faulty legislation"), *aff'd,* 922 F.2d 1331 (7th Cir.1991);

*United States v. Davis,* 715 F.Supp. 1473, 1477–78 (C.D.Cal.1989) (Letts, J.) (holding Guidelines unconstitutional due to limitations on sentencing discretion), *overruled by United States v. Wilson,* 900 F.2d 1350 (9th Cir.1990);

*United States v. Alafriz,* 690 F.Supp. 1303, 1310–11 (S.D.N.Y.1988) (Sweet, J.) (holding Guidelines unconstitutional as denying due process right to individualized sentence by judge), *overruled by United States v. Vizcaino,* 870 F.2d 52 (2d Cir. 1989);

*United States v. Bogle,* 689 F.Supp. 1121, 1163 (S.D.Fla.1988) (en banc) (Aronovitz, J., concurring) (finding Guidelines unconstitutional on due process grounds), *overruled by United States v. Perez–Garcia,* 904 F.2d 1534 (11th Cir.1990);

*United States v. Brittman,* 687 F.Supp. 1329, 1349–54 (E.D.Ark.1988) (Eisele, C.J., writing for all judges of Eastern District except Judge Reasoner) (holding Guidelines unconstitutional due, in part, to transfer of sentencing discretion to prosecutors), *rev'd,* 872 F.2d 827 (8th Cir.), *cert. denied,* 493 U.S. 865, 110 S.Ct. 184, 107 L.Ed.2d 140 (1989);

*United States v. Ortega Lopez,* 684 F.Supp. 1506, 1513 (C.D.Cal.1988) (en banc) (striking Guidelines as violative of right to individualized sentencing), *overruled by United States v. Brady,* 895 F.2d 538 (9th Cir.1990);

*United States v. Frank,* 682 F.Supp. 815, 817–19 (W.D.Pa.) (Ziegler, J.) (same), *rev'd,* 864 F.2d 992 (3d Cir.1988), *cert. denied,* 490 U.S. 1095, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989).

*See also:* JUDICIAL CONFERENCE OF THE UNITED STATES, REPORT OF THE FEDERAL COURTS STUDY COMMITTEE 133–40 (1990) (recommending repeal of mandatory minimum sentencing statutes and substantial reform of Guidelines); *id.* at 141 (additional statement by Judge Keep) ("The federal sentencing guidelines are not working. According to the legislative history, the goal of the guidelines was honesty, uniformity, and proportionality in sentencing.... The guidelines are failing miserably in achieving any of these goals.").

Ellsworth A. Van Graafeiland, *Some Thoughts on the Sentencing Reform Act of 1984,* 31 VILL.L.REV. 1291, 1293 (1986) ("The consensus of most knowledgeable critics is that the Commission's sentencing by the numbers approach is too depersonalized, too complicated, too punitive, and too burdensome of application."); *id.* at 1294 (predicting that Guidelines will "impose a massive additional burden on the courts, particularly at the appellate level").

SILBERMAN, Circuit Judge, dissenting:

I do not agree that presentence drug rehabilitation efforts may be considered under the rubric of "Acceptance of Responsibility," U.S.S.G. § 3E1.1, so to justify a two-level offense reduction, nor that " 'extraordinary' " rehabilitation, Maj.Op. at 962 (quoting *United States v. Sklar,* 920 F.2d 107, 116 (1st Cir.1990)), may support further reduction under U.S.S.G. § 5K2.0. I also disagree that Application Note 2 to section 3E1.1 permits acceptance of responsibility reductions for defendants such as Harrington.

I would follow the Third and Ninth Circuits in concluding that U.S.S.G. § 5H1.4—which states that "[d]rug dependence ... is not a reason for imposing a sentence below the guidelines"—clearly indicates that the Sentencing Commission considered and rejected drug rehabilitation as a basis for downward departure. *See United States v. Martin,* 938 F.2d 162, 163 (9th Cir.1991); *United States v. Pharr,* 916 F.2d 129, 132–33 (3d Cir.1990). I cannot imagine that the Commission explicitly rejected the notion of drug dependence as a reason for downward departure without implicitly rejecting the companion concept of drug rehabilitation. After all, rehabilitation is not relevant unless one is dependent. *See Martin,* at 163; *Pharr,* 916 F.2d at 133. And the Commission's recommendation that addicted defendants be sentenced to supervised release with participation in drug treatment programs *after* incarceration, *see* U.S.S.G. § 5H1.4, is a further indication that the Commission considered and rejected rehabilitation as a sentencing factor. *See Martin,* at 163.

The majority fails to confront section 5H1.4, merely stating without explanation that "the Commission ha[s] not squarely addressed the issue we face." Maj.Op. at 962. The district judge thought that the Commission's "rejection of addiction as a sentencing factor is no indication of its consideration of susceptibility to successful treatment for drug addiction," *United States v. Harrington,* 741 F.Supp. 968, 976 (D.D.C.1990), which, as I indicate above, I think is fallacious. It is not clear to me whether the majority agrees or disagrees with the district judge on this point.

To be sure, the Third and Ninth Circuits have not decided that acceptance of responsibility reductions for drug rehabilitation are unavailable to defendants whose crimes are drug-related (the Third Circuit explicitly reserved the issue). But that the Commission rejected drug dependence—and therefore rehabilitation—as a sentencing factor under section 5H1.4, I think, forecloses this result. Moreover, even if the Commission had not rejected rehabilitation as a sentencing factor, I do not think drug rehabilitation fits within section 3E1.1. A defendant's participation in a drug treatment program does not evince his acceptance of responsibility for the crime he committed, even where—as here—that crime was distributing illegal drugs. Rather, it demonstrates only the defendant's desire to improve himself, *see Pharr,* 916 F.2d at

132, and perhaps to obtain a lighter sentence.

The majority's holding permits, even encourages, the very "battle[s] of experts" the majority wishes to avoid. Maj.Op. at 960. Leaving open the possibility for unlimited downward departure for " 'extraordinary' " rehabilitation invites expert testimony as to whether the defendant's rehabilitation efforts are in fact exceptional— particularly since the majority does not define extraordinary rehabilitation.

Finally, the majority's reading of Application Note 2 as not precluding acceptance of responsibility reductions for defendants who, like Harrington, maintain their innocence and proceed to trial is dubious. The note makes clear that defendants who put the government to its burden of proof will qualify for a reduction only "[i]n rare situations." U.S.S.G. § 3E1.1 Application Note 2. Presentence drug rehabilitation efforts are anything but rare, as the district court below recognized. *See* Transcript of Sentencing, June 27, 1990, at 11 ("The Court: [speaking to defendant Harrington] ... If I do this ..., and you don't keep on doing what you're doing now, you are going to ruin the chance not only for yourself but for *thousands and thousands of people* who might have a chance [like yours]...." (emphasis added)).